**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4588**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

DARYL JOHN VAN DONK, a/k/a Daryl Jon Van Donk,

Defendant – Appellant.

**No. 20-4167**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

DARYL JOHN VAN DONK, a/k/a Daryl Jon Van Donk,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Michael F. Urbanski, Chief District Judge.  (5:14-cr-00042-MFU-1)

Argued:  January 30, 2020                    Decided:  June 8, 2020

Before WILKINSON, DIAZ, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge Floyd joined.

———————————

**ARGUED:** Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Harrisonburg, Virginia, for Appellant. Laura Day Rottenborn, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

———————————

DIAZ, Circuit Judge:

Daryl Van Donk challenges a condition of his supervised release requiring him to comply with the rules of his sex-offender treatment program, which ban him from viewing any materials that sexually arouse him. He argues that this ban is too restrictive to comport with 18 U.S.C. § 3583(d), is unconstitutionally overbroad and vague, and is an impermissible delegation of the court's duty to impose conditions of supervised release.

We disagree. The ban is permissible under § 3583(d) and isn't overbroad because the district court made an individualized assessment, based on the testimony of Van Donk's treatment provider, that it was necessary. It's enforced in a way that avoids the issues with which the vagueness doctrine is concerned. And it's not an impermissible delegation because only the district court will decide whether Van Donk violated his conditions of release. We thus affirm the release condition imposed by the district court.[1]

I.

This case has a long procedural history involving several supervised-release revocation proceedings. We begin by summarizing it.

A.

Van Donk was convicted in 2008 of possessing more than 600 images of child pornography and sentenced to eighty months in prison, followed by five years of

---

[1] Some of the materials in the factual record were submitted under seal. At oral argument, Van Donk moved to unseal them. We grant that motion, as discussing those materials is necessary to explain our decision in this case.

supervised release. The district court imposed thirteen standard conditions of supervised release, as well as eleven special conditions tailored to child-pornography offenders. One of these special conditions was that Van Donk participate in a sex-offender treatment program of his probation officer's choosing. Another condition was that Van Donk not possess any material depicting adults or minors "engaged in sexually explicit conduct, as defined by 18 U.S.C. § 2256(2)."[2] S.J.A 133.

Sometime after Van Donk's release, his probation officer discovered that he had child pornography at his mother's house. He admitted to viewing these images and to visiting a Goodwill store to view pornography on its computers. The district court revoked Van Donk's supervised release and sentenced him to another twelve months in prison followed by three years of supervised release.

Van Donk was released again in November 2015, completed a ten-month intensive inpatient sex-offender treatment program in Minnesota, and then returned to his Virginia home. At his probation officer's direction, he entered an outpatient sex-offender treatment program run by Vicki Cash Graff, a clinical social worker.

---

[2] Subsection 2256(2) defines "'sexually explicit conduct'" as "actual or simulated—

(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
(ii) bestiality;
(iii) masturbation;
(iv) sadistic or masochistic abuse; or
(v) lascivious exhibition of the anus, genitals, or pubic area of any person."

18 U.S.C. § 2256(2)(A).

During an unannounced search in May 2017, a probation officer found two hundred sexually explicit DVDs at Van Donk's residence. Police officers found no child pornography on these DVDs, however. His probation officer verbally reprimanded him and advised that he was now on a zero-tolerance policy.

In May 2018, Van Donk failed a polygraph examination (administered by his probation officer) regarding whether he had viewed pornography. He then admitted to "having watched a shower scene between two females ages 8–10" on a Spanish cable channel. J.A. 90. A subsequent search of Van Donk's home uncovered sixteen DVDs and a cell phone containing pornography. Some of the DVDs purported to depict juveniles, although police couldn't determine whether the individuals therein were minors. Additionally, the probation officer found a handwritten list of pornographic films and individuals depicted therein on his bedside table, some of whose titles referenced juvenile girls. Van Donk explained to the officer that he wrote these titles down so he could remember them after his period of supervision was over. The officer then petitioned to revoke Van Donk's supervised release.

B.

The district court held a revocation hearing in October 2018. Van Donk's probation officer testified as to the pornographic materials found at Van Donk's home. The officer also cited a report from Graff, who was still supervising Van Donk's treatment. Graff's report indicated that Van Donk "was no longer receptive to any type of treatment services" and was "riding out the remainder of his period of supervision." S.J.A 158.

5

Van Donk offered letters from several people about the progress that he had made, including his supervisor from the Minnesota inpatient treatment program he had attended two years earlier. That supervisor opined that it was healthy for Van Donk to use pornography to "bridge arousal to adult targets." J.A. 92. He noted, though, that Van Donk "had a history of using sexually explicit material to cope with life" and that if he was continuing to do that, it would be problematic. J.A. 93. Van Donk's counsel conceded that he had violated his conditions of release, but asked that he be treated leniently because he was only caught with adult pornography and because he was understandably tired of going through Graff's intense program.

The district court sentenced Van Donk to six more months in prison and eighteen months of supervised release, a sentence within the applicable Federal Sentencing Guidelines. The court said that it was "reaffirming each and every one of the conditions we have imposed" after Van Donk's revocation, S.J.A. 188, and then announced:

> I have said, and I have made as clear as I can, an individual assessment that this gentleman cannot possess pornography of any kind because he cannot be constrained from straying from sexually explicit conduct into the area of child pornography. He's just done it time and time again and for that reason, I find and I conclude that I believe that this condition of no sexually explicit material . . . is appropriate for his specific circumstances . . . .

> No pornography for Mr. Vandonk [sic]. I have made my individual assessment based on his own conduct and his inability to stay away from images involving or portraying children involved in sex.

S.J.A 191–92.

Despite stating that it was reaffirming the prior conditions, the court reworded some of them without explaining why. The court replaced the earlier condition banning sexually

6

explicit materials with one stating that Van Donk "shall not possess, view or otherwise use any type of pornography, to include adult, juvenile or child pornography, or pornography that depicts juveniles." J.A. 36. Another new condition—the one at issue in this appeal— was that Van Donk submit to sex-offender treatment and "abide by all rules, requirements, and conditions imposed by the treatment provider until discharged from treatment by the provider." J.A. 34.

Van Donk appealed, challenging the condition that he not use "any type of pornography" as overbroad and unconstitutionally vague. The government conceded that a ban on "pornography," without further definition, might be too vague. The government thus moved to remand to the district court, asserting that the condition should, as it did before, ban depictions of sexually explicit conduct as defined by 18 U.S.C. § 2256(2). We granted the government's motion. In the meantime, Van Donk was released from prison in May 2019 and re-entered Graff's outpatient program.

C.

The district court held a hearing on the condition banning pornography in July 2019, at which Graff testified. She has been a certified sex-offender treatment provider for nearly thirty years. Graff initially prohibits all of her patients from viewing sexually explicit materials, but she had been working with Van Donk long enough to see that this prohibition was especially needed for him.

A goal of Graff's program is for patients to develop healthy sexual relationships, and she thought "pornography serves as a barrier" to Van Donk's "engaging in contact with age-appropriate partners." J.A. 98–99. She posited that Van Donk was addicted to

7

pornography and, because Van Donk was aroused by both adult and juvenile females, she feared that "would eventually lead to child porn." J.A. 99. She also believed that his prior treatment program, which used pornography to try to limit his arousal to adults, was unsuccessful.

Graff expected Van Donk to remain in her program for the full eighteen months of his supervised release. She wouldn't allow Van Donk to view pornography at any point in the program and didn't think he should ever view it for the rest of his life. In fact, she suggested that pornography "isn't healthy" for anyone. J.A. 103.

Graff also explained that her program's definition of "pornography" extended to mainstream media (like movies or advertisements) that sexually aroused Van Donk. In her view, if Van Donk were to see *anything* that aroused him enough that he wanted to view it again or masturbate to it—even a scene in a mainstream movie or a television show—he should report it to Graff and then not access it again. Graff stated that a relationship with a peer-aged woman would be a sign of progress for Van Donk.

Van Donk's counsel argued that the pornography ban Graff described was overbroad and vague, and that the court shouldn't be enforcing rules meant to help Van Donk have healthy relationships because that is beyond the scope of supervised release. While crediting Graff's testimony that adult pornography could be a gateway to child pornography, the district court agreed with Van Donk that its prior ban on any type of pornography "might technically be overbroad" and replaced it with a ban on child

8

pornography.[3] J.A. 123. But the court noted that another condition of release, which would remain in place, required Van Donk to comply with his treatment provider's rules. If Van Donk was kicked out of treatment because he broke Graff's rules—including her ban on materials that arouse him (her "pornography ban")—he would violate his terms of supervised release. The court explained that it shouldn't "micromanage treatment protocols." J.A. 124.

The district court promptly filed a written order explaining its findings. Therein, the court summarized Graff's testimony about why Van Donk shouldn't use adult pornography and reiterated that Van Donk must comply with all of Graff's rules. Based on Graff's testimony, the court

> remain[ed] convinced that defendant's successful completion of sex offender treatment designed to promote healthy relationships and prevent the return to the illegal use of child pornography requires him to follow the treatment protocols established by his sex offender treatment counselor, including [her pornography ban].

J.A. 69.

Van Donk then appealed, challenging the condition that requires him to follow Graff's rules, including her pornography ban.

D.

In October 2019, while this appeal was pending, Van Donk's probation officer petitioned the district court to revoke his supervised release. The officer alleged that Van

---

[3] This condition now reads: "[T]he defendant shall not possess any material that depicts child pornography or minors engaged in sexually explicit conduct as defined in 18 [U.S.C. §] 2256(2)." J.A. 121.

9

Donk had violated the conditions that he answer the officer's questions truthfully, that he follow the officer's instructions as to the conditions, and that he follow his treatment provider's rules. As a result, Graff had discharged Van Donk from her program. According to the petition, Van Donk admitted to the officer that he had purchased, viewed, and destroyed about one or two dozen adult-pornographic movies. One of the movies, he admitted, may have contained a juvenile girl taking a shower.

A few days later, Van Donk appeared in court to respond to the petition, and the magistrate judge released him on a personal recognizance bond. The magistrate judge added two new conditions of release, banning Van Donk from using Internet-capable devices without the court's prior approval and ordering that he disclose all such devices to which he has access. Van Donk then moved to amend these conditions. He informed the court that he was trying to find a treatment provider other than Graff, but to the extent that a new provider would ban him from viewing adult pornography, he maintained his objection to such a ban being enforced by the court for the reasons stated in his appeal.

Shortly thereafter, Van Donk reported to his probation officer that he had recently viewed pornography and had either entered a sex shop or used sex-related phone services. An officer then visited Van Donk at his home, where Van Donk admitted accessing the Internet on his phone for the past three weeks and viewing adult pornography. A scan of the phone revealed adult pornography. The officer filed this new information with the court, alleging that Van Donk had violated the condition that he immediately disclose any Internet-capable devices to which he had access.

10

The district court promptly held a supervised-release revocation hearing. Graff and Van Donk's probation officer testified. Graff stated that she and Van Donk had met once a week while he was in the program and had discussed her pornography ban each time. She defined "pornography" for Van Donk as any materials that gave him an erection, and stated that

> if he happened upon images in mainstream movies that made him have an erection, we would discuss it. And many times that would be okay. The part that would make it not okay would be if he began seeking out that same movie over and over and over. But having it occur in a movie that he had no idea would have something like that in it was fine and even encouraging at times.

Feb. 3, 2020 Revocation Hr'g Tr. 12:11–15, ECF No. 57-8. She also said that Van Donk was frustrated by not being allowed to watch pornography, but never seemed confused about what materials she forbade or asked whether a particular image was acceptable. After he had been in her program for five months, Graff learned from Van Donk's probation officer that he had frequently been viewing pornography, and she confronted him about it. After he admitted it to her, she expelled him from her program.

The probation officer testified that Van Donk (1) never expressed confusion to her about what fell under Graff's ban; (2) had ordered, viewed, and then destroyed dozens of explicit pornographic videos, some of which purported to depict juveniles; (3) initially lied about this to his probation officer; (4) activated his cell phone to connect to the Internet; and (5) bought a laptop without telling his probation officer.

The district court concluded that Van Donk had violated the following five conditions of release:

11

Standard Condition 4: "You must answer truthfully the questions asked by your probation officer."

Standard Condition 13: "You must follow the instructions of the probation officer related to the conditions of supervision."

Special Condition 6: "The defendant must abide by all rules, requirements, and conditions imposed by the treatment provider until discharged from treatment by the provider."

Special Condition 7: ". . . The defendant may not purchase, possess, or use any computer . . . cellular telephone, or other Internet-capable device, without the prior approval of the court, upon consultation with the probation officer."

Special Condition 8: "The defendant must immediately disclose to the probation officer all computer devices, cellular telephones, or Internet-capable devices to which the defendant has access."

*See* Gov't Feb. 11, 2020 Resp. Letter 1–2, ECF No. 56.

On that basis, the court revoked Van Donk's supervised release, sentencing him to nine more months in prison and another year of supervised release, with the same conditions in place. The court expressed its frustration with Van Donk's lies and his disregard for its orders. The court also reaffirmed its finding, based on Graff's testimony, that Van Donk should be prohibited from viewing pornography.

Van Donk filed a new appeal, which we consolidated with his previous appeal, challenging Special Condition 6 to the extent it forbids him to view pornography. While Van Donk is currently in prison and not in Graff's program, he contends (and we agree) that his appeal remains ripe because he is serving a sentence based in part on a violation of Graff's rules, and because he may rejoin Graff's program when he is released. Graff is the only sex-offender treatment provider in the Harrisonburg, Virginia area under contract with the United States Probation Office.

12

We proceed to consider whether Special Condition 6, to the extent it required and may continue to require Van Donk to follow Graff's pornography ban, is proper.

II.

We review special conditions of supervision for abuse of discretion, recognizing that district courts have "broad latitude" in this space. *United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003). "A district court by definition abuses its discretion when it makes an error of law," *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (cleaned up), such as by violating a constitutional right.

Van Donk argues that the condition mandating that he abide by his treatment provider's rules—in particular, Graff's pornography ban—was an abuse of discretion, for three reasons. We address each in turn.

A.

First, Van Donk contends that because the district court ordered that he follow the treatment provider's rules, those rules are subject to 18 U.S.C. § 3583(d), which

> requires that special conditions of supervised release be: (1) "reasonably related" to the statutory goals of deterrence, protection of the public, and rehabilitation; (2) "no greater [a] deprivation of liberty than is reasonably necessary" to achieve those statutory goals; and (3) consistent with any relevant policy statements issued by the Sentencing Commission.

*United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020) (alteration in original) (quoting 18 U.S.C. § 3583(d)). In his view, Graff's pornography ban doesn't comport with § 3583(d) because it's more restrictive than is necessary to serve the purposes of supervised release.

13

We agree with Van Donk that § 3583(d) applies to the pornography ban. We have previously regarded treatment protocols as subject to § 3583(d) where the district court expressly authorized (but didn't order) the defendant's treatment provider to use them. *See Dotson*, 324 F.3d at 260–61 (authorizing a defendant's sex-offender treatment provider to use polygraph and penile plethysmograph testing on the basis that such tests were "reasonably related" to the purposes of supervised release (quoting 18 U.S.C. § 3583(d)(1)); *see also United States v. Behren*, 65 F. Supp. 3d 1140, 1148 (D. Colo. 2014) (viewing "the requirements of the [sex-offender treatment] program as being, in effect, conditions of supervised release").

We take the same tack here, where the district court made findings to support Graff's pornography ban and stated that Van Donk's release could be revoked if he was expelled from Graff's program for violating the ban. The district court's authority to impose special conditions comes from § 3583(d), so it would be wrong for the court to enforce a rule that ventures beyond the statute's requirements. Treatment providers shouldn't be able to compel patients to do things wholly unrelated to the purposes of supervised release—e.g., learn to ride a unicycle—under threat of the court revoking the patient's release.

We don't believe, however, that Graff's pornography ban runs afoul of § 3583(d). A sentencing court must provide an individualized explanation for why any special conditions it imposes are appropriate in light of the § 3583(d) factors. *McMiller*, 954 F.3d at 676–77. The amount of explanation required "will vary with the nature of the condition imposed and the circumstances of each case." *Id.* at 677. An inadequate explanation is cause for remand. *See id.*

14

Restrictions on otherwise legal pornography are permissible under § 3583(d) where the district court adequately explains why they are appropriate, and the record supports such a finding. *See United States v. Lord*, 393 F. App'x 60, 63 (4th Cir. 2010) (per curiam) (upholding a ban on any "sexually explicit materials" on plain error review); *United States v. Henson*, 22 F. App'x 107, 112 (4th Cir. 2001) (per curiam) (upholding an analogous ban "[i]n light of Henson's conviction for receiving more than 100 images of child pornography and his prior conviction for taking indecent liberties with a minor"). For example, other circuits have upheld bans on adult pornography where a treatment provider testified that sexually stimulating images could cause the defendant to revert to accessing child pornography, *see United States v. Brigham*, 569 F.3d 220, 232–34 (5th Cir. 2009); where the defendant had often videotaped his sexual assaults, leading the district court to find a connection between pornography and his criminal behavior, *see United States v. Simmons,* 343 F.3d 72, 81–83 (2d Cir. 2003); and where a probation officer believed that such a ban was needed to address the defendant's deviant sexual behavior triggered by his alcohol abuse, *see United States v. Bee*, 162 F.3d 1232, 1234–35 (9th Cir. 1998).

In contrast, appellate courts have struck down such conditions when they were unaccompanied by individualized explanations for their broad sweep. Indeed, we recently vacated a ban on sexually explicit materials because the district court's only explanation for it was that it's "a standard condition for sex offenders" and "necessary and appropriate under the circumstances." *See United States v. Wroblewski*, 781 F. App'x 158, 162–63 (4th Cir. 2019) (per curiam); *see also United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009); *United States v. Eaglin*, 913 F.3d 88, 99–101 (2d Cir. 2019) (collecting cases

15

"finding an adult pornography ban to be more restrictive than necessary to achieve the goals of sentencing where there is little indication that access to such material will impede a defendant's rehabilitation or put the community at risk").

Here, the district court credited Graff's testimony that her pornography ban is meant to keep Van Donk from recidivating and to treat his pornography addiction. According to Graff, adult pornography and other sexually stimulating images could serve as a gateway to child pornography for Van Donk, and his addiction threatened to hinder his mental health and social relationships in the future. Graff based her opinion on her nearly thirty years of experience as a sex-offender treatment provider and her extensive dealings with Van Donk. And her concern about Van Donk's addiction is corroborated by his previous treatment provider, who stated that it "could be problematic" for Van Donk to use pornography to "cope with his emotions." J.A. 93.

Based on this evidence, the district court found that Graff's restriction on sexually stimulating material was necessary to treat Van Donk's addiction and to deter him from future crimes. The court explained its finding at length in a written order and at multiple hearings. Treatment and deterrence are permissible purposes for conditions of release. *See* 18 U.S.C. § 3583(d)(1) (citing *id.* § 3553(a)(2)(B), (D)). Thus, the district court acted within its discretion by ordering Van Donk to follow Graff's restriction.

Van Donk's counterarguments are unavailing. While he's correct that Graff bans *all* of her new patients from accessing pornography, she testified (and the court found) that the ban was particularly needed in his case, satisfying the requirement that the district court make an individualized assessment as to each special condition. And while not every

16

treatment provider might share Graff's negative view of pornography—i.e., her belief that it's unhealthy for *anyone*—hers was the only expert testimony in this case, and her concern for Van Donk was corroborated by his prior treatment provider.

B.

Van Donk's second argument is that Graff's ban on sexually stimulating material, and thus Special Condition 6, is facially invalid because it is both unduly vague, in violation of the Fifth Amendment's due process clause, and overbroad, in violation of the First Amendment's free speech clause. We address his vagueness challenge first.

1.

A condition of supervised release is unconstitutionally vague if it doesn't give a probationer "fair notice of the conduct that it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). In the case of a special condition banning "pornography" or "sexually stimulating material," the relevant concerns are that a probationer might not know what items are forbidden and that a judge or probation officer could arbitrarily decide that an item is prohibited and therefore punish the probationer. *See United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002). Due to these risks, appellate courts have generally held that conditions banning "pornography" or "sexually stimulating materials," without defining those terms, are unduly vague. *See, e.g.*, *United States v. Adkins*, 743 F.3d 176, 194–95 (7th Cir. 2014) (vacating such a condition for vagueness and collecting other cases); *Simmons*, 343 F.3d at 82 (noting that the term "pornography" is "inherently vague" and tying it to the definition contained in 18 U.S.C. § 2256(8) to cure the issue); *United States v. Phipps*, 319 F.3d 177,

17

192–93 (5th Cir. 2003) (narrowing a ban on "sexually oriented or sexually stimulating materials" to refer only to the kind of materials available at "such places as strip clubs and adult theaters or bookstores").

Here, Graff forbade Van Donk from viewing any materials that gave him an erection. In the abstract, that's a difficult standard to apply and enforce. *Cf. Adkins*, 743 F.3d at 194 ("[H]ow can we tell which images . . . are sexually stimulating for Adkins?"). But Graff's rule is different from the special conditions in the above-cited cases because it wasn't imposed by the district court. Nor is it a static law that applies to a large group of people like a criminal statute, for which precision is especially important. It is instead a treatment protocol, subject to ongoing discussion between Van Donk and Graff and with a de facto scienter requirement.

We think that this distinction is relevant to our analysis of Van Donk's facial challenge. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (stating that the standard for vagueness shouldn't be "mechanically applied" because "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment"). Evidence describing how Graff's program operates, including that Van Donk wasn't confused about what was prohibited, combined with the general rule that probationers may not be punished for inadvertent violations, satisfy us that there was no due process issue with ordering Van Donk to follow Graff's rules. In short, the two concerns underlying the vagueness doctrine—inadequate notice and arbitrary enforcement—aren't implicated here.

18

As to the first concern, Van Donk has never expressed uncertainty about what he could and couldn't view, and he could have asked Graff for clarity at any time. Indeed, she encouraged him to do so. They had weekly meetings where they discussed the pornography ban. Vagueness issues are mitigated where the regulated party has "the ability to clarify the meaning of the regulation by its own inquiry." *See Vill. of Hoffman Estates*, 455 U.S. at 498. In contrast to Graff's program, persons don't have regular meetings with Congress or their sentencing judge to ask what statutes or release conditions mean.

Graff also applied her rule in a way that protected Van Donk if he didn't *know* that he was breaking it. For example, she asked that Van Donk report any incidents where he had been tempted to repeatedly view and masturbate to any particular video or image. When he did that, she didn't expel him; rather, she told him not to access that video or image again. As Graff testified, her concern wasn't that Van Donk would happen upon a sexually stimulating scene in a mainstream film or television show. It was that he would access visual materials *for the purpose of getting sexually aroused*. In essence, to violate Graff's rule, Van Donk must *specifically intend to do so*. Taking that into account, Graff's rule is clearer than an undefined ban on pornography or sexually stimulating materials. The hypotheticals that courts vacating pornography-ban release conditions have focused on—e.g., that a probationer will be imprisoned for admiring the artistic beauty of a Michelangelo sculpture, *see United States v. Loy*, 237 F.3d 251, 264 (3d Cir. 2001)—are not implicated here.

For the same reasons, in assessing whether Van Donk broke Graff's rule, the district court would not have to make arbitrary decisions about what counts as "sexually

19

stimulating." It would only punish Van Donk if he *purposely* accesses materials for a reason that he *knows* is prohibited. A scienter requirement like this mitigates vagueness concerns. *Vill. of Hoffman Estates*, 455 U.S. at 499. And even if Graff accuses Van Donk of violating her rule, Van Donk would be able to explain to his probation officer—and ultimately to the court at a revocation hearing—that he lacked the requisite scienter to do so.

We note also that Graff's scienter requirement overlaps with the general rule that a district court may not revoke supervised release for "inadvertent violations," *United States v. Johnson*, 446 F.3d 272, 281 (2d Cir. 2006) (citing *Arciniega v. Freeman*, 404 U.S. 4, 4 (1971) (per curiam)); *see also Bearden v. Georgia*, 461 U.S. 660, 672–73 (1983) (holding that it will usually violate "the fundamental fairness required by" due process to imprison a probationer because he lacks the resources to pay a fine). Because of this scienter requirement, there's no danger that Van Donk could commit an inadvertent violation.

Graff's rule admittedly leaves some gray areas. But conditions of release need not "describe every possible permutation, or spell out every last, self-evident detail." *Johnson*, 446 F.3d at 280. Van Donk had fair notice of what was forbidden: accessing materials for the purpose of getting sexually aroused. He could have asked for further clarity at any time. And given how Graff's program functions, her rule's scienter requirement, and the general rule against punishing inadvertent violations, there was little risk that Van Donk's supervised release would be revoked arbitrarily. Relying on remote hypotheticals to vacate Graff's pornography ban would let the tail wag the dog. *Cf. Johnson*, 135 S. Ct. at 2560 (noting that "even clear laws produce close cases").

The circumstances that led to Van Donk's supervised release being revoked three times are instructive as to the minimal risk of arbitrary enforcement. Each time, Van Donk admitted to viewing dozens of pornographic videos. Two of these times, he initially lied to his probation officer about it. He has never expressed uncertainty about whether these videos were acceptable in Graff's program. He *knew* that he was breaking her rule and kept doing it anyway. Only then was his supervised release revoked, and then only after being heard in the district court. The gray areas of Graff's rule have not played a role in these revocations, and Van Donk has not explained why they are likely to do so in the future if he rejoins her program.

If vagueness issues do arise, Van Donk may bring an as-applied challenge in revocation proceedings. Contrary to what he argues, as-applied challenges are not inconsistent with *United States v. Sanchez*, 891 F.3d 535 (4th Cir. 2018). There, we said that "a defendant may not challenge the special conditions of his original term of supervised release during later revocation proceedings." *Id.* at 539 (citing *United States v. Johnson*, 138 F.3d 115, 117–18 (4th Cir. 1998)). But that statement refers to *facial* challenges. An as-applied argument in a revocation proceeding doesn't challenge the special condition's facial validity, but rather its application to a particular act by the probationer. *Cf. Farrell v. Burke*, 449 F.3d 470, 486–94 (2d Cir. 2006) (Sotomayor, J.) (analyzing an as-applied vagueness challenge to a special condition banning pornography).

We recognize that the Third and Ninth Circuits have stated that a supervised release condition banning "pornography" isn't redeemed by the probationer's ability to check with his probation officer. *See Guagliardo*, 278 F.3d at 872; *Loy*, 237 F.3d at 266. Those courts

reasoned that, "without a more definitive standard to guide the probation officer's discretion, there is a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating." *Loy*, 237 F.3d at 266; *accord Guagliardo*, 278 F.3d at 872. The Ninth Circuit was also troubled that "[a] probation officer could well interpret the term more strictly than intended by the court or understood by [the probationer]." *Guagliardo*, 278 F.3d at 872.

This case is different. For starters, Graff isn't barring anything that *she personally* "finds titillating." She's barring Van Donk from intentionally seeking out materials that arouse *him*. That's the "more definitive standard" that was absent in the Third and Ninth Circuit cases. Also, unlike with the probation officers in those cases, the court is not asking Graff to interpret the *court*'s rule. Graff is using her *own* treatment protocol. Thus, there's no risk of a disconnect between the rule's creator and its interpreter—i.e., that Graff might tell Van Donk he can't do something the court meant to allow, or vice versa.

In sum, Graff's ban on materials that arouse Van Donk comports with due process because it's enforced in a way that avoids the issues with which the vagueness doctrine is concerned.

2.

We turn briefly to Van Donk's overbreadth challenge. Graff's pornography ban encompasses various materials that enjoy First Amendment protection. *See United States v. Williams*, 553 U.S. 285, 288 (2008) (indicating that, while obscenity and child pornography aren't protected by the First Amendment, sexually explicit materials that have "social value" are). But that doesn't make her ban unconstitutionally overbroad.

22

A condition of supervised release may restrict a probationer from engaging in what would otherwise be protected conduct, so long as the condition comports with 18 U.S.C. § 3583(d). Indeed, many typical conditions of release do this, like the one that forbids Van Donk from leaving his judicial district without permission. The First Amendment overbreadth doctrine thus isn't relevant in the context of a supervised-release condition that satisfies § 3583(d)'s requirements, like this one. *See United States v. Albanese*, 554 F.2d 543, 547 (2d Cir. 1977) ("Since, unlike a statute, the probation condition at issue here can affect only appellant, and since his conduct could be legitimately proscribed, it would be inappropriate for us to consider whether the condition might be overbroad on its face."); *cf. Adkins*, 743 F.3d at 194–95 (collecting cases addressing vagueness and overbreadth challenges to conditions restricting access to sexually explicit materials, all of which focused on either vagueness or whether the restriction comported with § 3583(d)).

We therefore reject Van Donk's First Amendment overbreadth challenge.

## C.

Lastly, Van Donk asserts that the district court improperly delegated a core judicial function—setting conditions of release—to Van Donk's treatment provider. He is wrong.

We agree with our sister circuits that it's proper for a court to order a probationer to follow treatment-program rules. *See United States v. Bender*, 566 F.3d 748, 750, 752 (8th Cir. 2009) (affirming a condition requiring that the defendant "follow all other lifestyle restrictions or treatment requirements imposed by the therapist"); *United States v. Fellows*, 157 F.3d 1197, 1204 (9th Cir. 1998) (same). Such a view comports with our recognition "that courts may use nonjudicial officers . . . to support judicial functions, as long as the

23

judicial officer retains and exercises ultimate responsibility." *United States v. Miller*, 77 F.3d 71, 77 (4th Cir. 1996); *accord United States v. Johnson*, 48 F.3d 806, 808–09 (4th Cir. 1995).

Of course, "the type of duty that the court may delegate is limited" by Article III. *Johnson*, 48 F.3d at 808–09. A court can't delegate "core judicial function[s]" such as the authority to decide the amount of a fine or restitution payment, *Miller*, 77 F.3d at 77, or whether a defendant must attend a treatment program, *United States v. Melendez-Santana*, 353 F.3d 93, 101 (1st Cir. 2003), *overruled on other grounds by United States v. Padilla*, 415 F.3d 211 (1st Cir. 2005)); *United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001). But a court may delegate "details with respect to the selection and schedule of the program." *Peterson*, 248 F.3d at 85.

Similarly, while the court itself must be the one to order treatment, it may require a probationer to comply with the terms set forth by the treatment provider. *See Bender*, 566 F.3d at 752; *Fellows*, 157 F.3d at 1203–04; *see also United States v. York*, 357 F.3d 14, 21–22 (1st Cir. 2004) (affirming a requirement that the defendant submit to periodic polygraph testing "as a means to insure that he is in compliance with the requirements of his therapeutic program"). Indeed, "[t]he court cannot be expected to design and implement the particularities of a treatment program." *Fellows*, 157 F.3d at 1204.

In Van Donk's case, the district court retains ultimate responsibility over the core judicial function of deciding whether Van Donk has violated his conditions of supervised release. This is demonstrated by recent events: When Van Donk was expelled from Graff's program, the court didn't automatically revoke his supervised release, but rather ordered

24

hearings on the issue. This regime affords Van Donk due process without micromanaging his treatment.

The cases Van Donk points to are either distinguishable or support our conclusion. In *United States v. Myers*, the Second Circuit recognized that courts don't have to manage the details of a treatment program. *See* 426 F.3d 117, 130 (2d Cir. 2005) (citing *Peterson*, 248 F.3d at 85). As we have explained, *United States v. Loy* is distinguishable because, here, the court isn't directing someone else to decide a difficult legal issue, i.e., to interpret a vague rule imposed by the court. Special Condition 6 authorizes the treatment provider to set and interpret *its own* rules, not to interpret the court's rules. In *United States v. Morin*, the Fifth Circuit vacated a condition authorizing a therapist to impose, "without court review," lifestyle restrictions that were *unrelated* to the defendant's compliance with the treatment program. *See* 832 F.3d 513, 516–18 (5th Cir. 2016). In doing so, the court expressly distinguished conditions like the one we have before us now, stating that therapists may devise "the manner and means of therapy during a treatment program." *Id.* at 516–17. Finally, in *United States v. Heckman*, the Third Circuit vacated a condition that ordered the defendant to follow the probation office's directions regarding contact with minors without cabining the office's discretion in any way. *See* 592 F.3d 400, 411 (3d Cir. 2010). The court reasoned that "a probation officer may not decide the nature or extent of the punishment imposed upon a probationer." *Id.* (cleaned up). That's not what's happening here, where the treatment provider is deciding only the means of court-ordered therapy.

## III.

For the reasons given, we conclude that Special Condition 6 is consistent with 18 U.S.C. § 3583(d), comports with due process and the First Amendment, and isn't an improper delegation of the court's authority.  Thus, the judgment of the district court is

*AFFIRMED.*