**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4568**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TAEYAN RAYMOND WILLIAMS,

Defendant - Appellant.

**No. 23-4595**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SCOTT ANTHONY WILLIAMS,

Defendant - Appellant.

Appeals from the United States District Court for the District of Maryland, at Greenbelt.
Theodore D. Chuang, District Judge. (8:18−cr−00631−TDC−2; 8:18−cr−00631−TDC−1)

Argued:  December 10, 2024                    Decided:  March 4, 2025

Before WILKINSON, QUATTLEBAUM, and BERNER, Circuit Judges.

———————————

Nos. 23-4568 and 23-4595 affirmed by published opinion.  Judge Quattlebaum wrote the opinion, in which Judge Wilkinson and Judge Berner joined.

———————————

**ARGUED:**  Brent Evan Newton, Gaithersburg, Maryland; Alfred Guillaume III, LAW OFFICES OF ALFRED GUILLAUME III, Greenbelt, Maryland, for Appellants.  Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Nicole M. Argentieri, Principal Deputy Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Erek L. Barron, United States Attorney, Baltimore, Maryland, William D. Moomau, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

———————————

QUATTLEBAUM, Circuit Judge:

After a federal jury convicted a father—Scott Williams—and a son—Taeyan Williams—of various offenses related to their drug distribution to college students, each appealed his judgment for separate reasons. Taeyan claims there was insufficient evidence to support his conviction for possession with intent to distribute the controlled substances found in Scott's home. Scott raises three issues. First, he argues the district court should have suppressed evidence found in his home because law enforcement failed to knock and announce before entering. Second, he asks us to remand for the district court to apply newly promulgated U.S.S.G. § 4C1.1 to his sentence. And third, Scott contends the district court improperly delegated judicial powers to the United States Probation Office in imposing substance abuse and mental health counseling as a condition of supervised release. Having considered the parties' arguments and reviewed the record, we affirm the district court with respect to both appeals and both judgments.

I.

This case arose from an investigation into the disappearance of a suspected drug dealer, Noah Smothers, and a large stash of his narcotics. Smothers was the primary marijuana supplier to Scott and Taeyan, who in turn operated a large-scale enterprise selling drugs to college students. Smothers had plans to meet Scott and Taeyan to resolve a dispute about money they owed him for drugs. But sometime after that scheduled meeting, Smothers disappeared, and his drug storage facility was left empty. Investigating these events, local law enforcement began tracking his last known locations, inspecting the

3

area around the storage facility and looking into Scott and Taeyan's potential roles in his disappearance. Consistent with that, a Maryland State Police corporal obtained a warrant to search Scott's residence in Prince George's County, Maryland for evidence related to "Smothers, his remains, or his personal property." J.A. 61. Although Smothers' body was never found, the execution of the search warrant yielded around $213,000, four firearms, 72.93 pounds of marijuana, 245.83 grams of cocaine, 546.93 grams of methamphetamine and a drug ledger found under the mattress in Scott's room.

A federal grand jury issued a multi-count indictment as to Scott and Taeyan. It charged them both with (1) conspiracy to distribute and possess with intent to distribute marijuana and cocaine; (2) conspiracy to interfere with interstate commerce by robbery and extortion; (3) interference with interstate commerce by robbery and extortion; (4) kidnapping with death resulting; (5) possessing, using, carrying and brandishing a firearm during and in furtherance of a crime of violence and drug trafficking crime; and (6) possession with intent to distribute marijuana and cocaine. The indictment charged Scott separately with (7) possession with intent to distribute methamphetamine; (8) possession of firearms in furtherance of a drug trafficking crime; and (9) conspiracy to destroy and conceal evidence.

After a joint trial, the jury found both Scott and Taeyan guilty of conspiracy to distribute and possess with intent to distribute marijuana and cocaine and possession with intent to distribute those same drugs. It found Scott alone guilty of possession with intent to distribute methamphetamine and conspiracy to destroy and conceal evidence. The district court sentenced Scott to 276 months' imprisonment for the counts of conviction,

4

followed by five years of supervised release. The court sentenced Taeyan to 150 months' imprisonment and a five-year term of supervised release. The jury acquitted both of kidnapping with death resulting and all other charges. These appeals followed.

## II.

### A. Taeyan

Taeyan raises just one issue. He argues that the evidence was insufficient to convict him of possession with intent to distribute the marijuana and cocaine found in his father's home during the execution of a search warrant. According to Taeyan, the evidence at trial did not establish that he resided at Scott's house. In advancing this argument, he points to the testimony of Scott's live-in girlfriend that Taeyan only visited the home on occasion and slept in a downstairs bedroom during those visits. Taeyan also contends that testimony of his friends—who said he lived elsewhere and even with the college students to whom he sold drugs—supports his argument.

We review a district court's denial of a Rule 29 motion for a judgment of acquittal based on insufficiency of the evidence de novo. *United States v. Farrell*, 921 F.3d 116, 136 (4th Cir. 2019). A defendant challenging the sufficiency of the evidence bears a heavy burden. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997). "A jury's guilty verdict must be upheld if, 'viewing the evidence in the light most favorable to the government, substantial evidence supports it.'" *United States v. Haas*, 986 F.3d 467, 477 (4th Cir. 2021) (quoting *United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017)). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate

and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (cleaned up). "We do not reweigh the evidence or the credibility of witnesses." *United States v. Roe*, 606 F.3d 180, 186 (4th Cir. 2010). Instead, we "assume that the jury resolved all contradictions in the testimony in favor of the Government." *Id.*

This standard of review is not just legal jargon inserted into an appellate decision in between the facts and the analysis. It necessarily restrains the way we consider Taeyan's appeal. Because of this standard, it is not enough for Taeyan to assert a non-frivolous argument. Nor is it enough that there is some evidence that supports his position. We are duty-bound to view the evidence in the light most favorable to the government and uphold the verdict if a reasonable jury could find Taeyan guilty beyond a reasonable doubt.

Applying this standard, the trial evidence was sufficient to convict Taeyan of possession with intent to distribute cocaine and marijuana. To understand why, we start with the offense elements. To prove possession with the intent to distribute controlled substances, the government must show: (1) possession of a narcotic controlled substance; (2) knowledge of the possession; and (3) the intent to distribute. 21 U.S.C. § 841(a)(1); *United States v. Collins*, 412 F.3d 515, 519 (4th Cir. 2005). Intent to distribute can be inferred from several factors, "including but not limited to: (1) the quantity of the drugs; (2) the packaging; (3) where the drugs are hidden; and (4) the amount of cash seized with the drugs." *Collins*, 412 F.3d at 519.

Taeyan's appeal focuses on the possession element. He primarily claims the government failed to satisfy that element because the trial evidence showed he did not live at Scott's home, where the evidence of his intent to distribute drugs was found. But that

6

argument misconstrues what is required to prove possession. The government did not need to prove that Taeyan permanently lived at the home as an element of conviction. Possession may be actual or constructive, and it may be sole or joint. *See United States v. Moody*, 2 F.4th 180, 189–90 (4th Cir. 2021). Important here, constructive possession requires "ownership, dominion, or control over the contraband or the premises or vehicle in which the contraband was concealed" and "knowledge of the presence of the contraband." *Id.* (citation omitted) (noting that constructive possession requires ownership, dominion or control over the contraband or premises in which the contraband was concealed); *see also United States v. Watkins*, 662 F.2d 1090, 1097–98 (4th Cir. 1981) ("Additionally, possession of a large amount of marijuana among several people working together may be sufficient to show that each has constructive possession.").

With those principles in mind, we consider the evidence tying Taeyan to Scott's house. Law enforcement seized Taeyan's birth certificate from the basement bedroom in Scott's home and a drug ledger from under Scott's mattress. Having a birth certificate at a parent's house is not a strange circumstance by itself. But the drug ledger referred to "me," "Team" and "Tae"—Taeyan's nickname—which reflects their joint efforts. J.A. 627. Also, a witness who bought drugs from Taeyan testified that he accompanied Taeyan to the house to pick up marijuana and drop off money. Another of Taeyan's drug associates said he went with Taeyan to Scott's house and when there went to "Taeyan's room." J.A. 1676. This witness also testified that when Taeyan was out of town, Taeyan directed him to pick up drugs to sell from "Taeyan's dad's house" or a car outside. J.A. 1682. This evidence connects Taeyan to the residence that served as the operating hub of the drug business and

shows his combined efforts with Scott to sell the drugs. It also indicates his familiarity with the house and his knowledge that drugs were present. Finally, it shows Taeyan's dominion and control over large amounts of drugs. From this evidence, a reasonable jury could conclude that Taeyan constructively possessed the marijuana and cocaine. *See United States v. Sutton*, 126 F.4th 869, 875 (4th Cir. 2025) (recognizing that sufficient evidence to determine the defendant constructively possessed hidden drugs and that "it doesn't strain the imagination to conclude she knew about the drugs.").[1] Thus, we affirm Taeyan's conviction for possession with intent to distribute the marijuana and cocaine found in Scott's home.

### B.  Scott

Scott raises three arguments on appeal. We address each in turn.

### 1.

Prior to trial, Scott moved to suppress all evidence seized from law enforcement's search of his house. According to Scott, law enforcement failed to "knock and announce" their presence before executing the search warrant. As a result, he claims the Fourth Amendment and 18 U.S.C. § 3109 require suppression of the evidence obtained during the search.

---

[1] Alternatively, the same evidence establishes liability on a co-conspirator theory under *Pinkerton v. United States*, 328 U.S. 640 (1946). "Under the *Pinkerton* doctrine, defendants are vicariously 'liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy.'" *United States v. Gillespie*, 27 F.4th 934, 938 (4th Cir. 2022) (quoting *United States v. Hare*, 820 F.3d 93, 105 (4th Cir. 2016)).

The government admitted the police did not knock and announce before executing the warrant. But it advanced two arguments in opposing Scott's motion. First, the government maintained that exigent circumstances permitted a no-knock entry. Second, it insisted that, even if the police should have knocked and announced before entering, suppression of evidence was not the appropriate remedy.

The district court denied Scott's motion to suppress, adopting the government's second argument. It held that suppression is not the remedy for a violation of the knock and announce rule based on the Supreme Court's decision in *Hudson v. Michigan*, 547 U.S. 586 (2006). Scott had argued that *Hudson* at most applied to his Fourth Amendment argument, not his § 3109 argument. But the district court disagreed, concluding that the Fourth Amendment's reasonableness requirement is reflected in § 3109 and that *Hudson* counsels the same outcome in both instances. *Cf. United States v. Bruno*, 487 F.3d 304, 305–06 (5th Cir. 2007).

On appeal, Scott contends that evidence should be suppressed when law enforcement violates the statutory knock and announce rule under § 3109, even if *Hudson* holds that suppression is not the appropriate remedy for a Fourth Amendment violation. And because the district court's order did not address exigent circumstances, he alternatively argues we should remand to the district court to resolve that issue.

In reviewing the denial of a motion to suppress, however, we are not limited to the district court's reasoning. *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018); *see also United States v. Brown*, 701 F.3d 120, 125 (4th Cir. 2012) (recognizing we are "entitled to reject a remand request" and affirm on any grounds if the evidence, viewed in

9

the light most favorable to the government, will sustain the denial of the motion to suppress). We may affirm on any ground supported by the record. *Bowman,* 884 F.3d at 209. Assuming that the warrant was executed in a no-knock manner, we conclude the record shows exigent circumstances that justified law enforcement's actions.[2] We thus need not decide whether the exclusionary rule applies to a violation of § 3109's statutory command.

The Fourth Amendment guards the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.[3] "It is, of course, well understood that '[t]he Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects.'" *United States v. Azua-Rinconada*, 914 F.3d 319, 324 (4th Cir. 2019) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). One element of the reasonableness inquiry is the requirement that law enforcement announce their presence and authority prior to entering to execute a search or an arrest warrant. *See Wilson v. Arkansas*, 514 U.S. 927, 931 (1995).

---

[2] In reviewing a district court's denial of a motion to suppress, we review the legal conclusions regarding Fourth Amendment violations de novo and any underlying factual determinations for clear error. *See United States v. Kimbrough*, 477 F.3d 144, 147 (4th Cir. 2007). We also construe the evidence in the light most favorable to the government. *See United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998).

[3] The full text of the Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

10

For that reason, "[t]he knock-and-announce requirement has long been a fixture in law." *Bellotte v. Edwards*, 629 F.3d 415, 419 (4th Cir. 2011) (recognizing that "[b]efore forcibly entering a residence, police officers 'must knock on the door and announce their identity and purpose.'"). The knock-and-announce requirement is also reflected in 18 U.S.C. § 3109, which provides that an "officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109. Thus, the statute "encompasses the constitutional requirements of the fourth amendment." *United States v. Kennedy*, 32 F.3d 876, 882 (4th Cir. 1994) (quoting *United States v. Singer*, 943 F.2d 758, 761 (7th Cir. 1991)); *see also United States v. Banks*, 540 U.S. 31, 42–43 (2003).

Even so, no-knock entries can still be reasonable. Under both the Fourth Amendment and § 3109, an officer need not knock and announce "when circumstances present a threat of physical violence, or if there is reason to believe that evidence would likely be destroyed if advance notice were given, or if knocking and announcing would be futile." *Hudson*, 547 U.S. at 589–90 (cleaned up) (citing *Wilson*, 514 U.S. at 936, and *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)). The bar for exigent circumstances is not high. Police must have only a reasonable suspicion under the particular circumstances that one of the grounds justifying a no-knock entry exists. *Id.* at 590; *see also Richards*, 520 U.S. at 394. Here, Kyle Simms, the Maryland State Police corporal who secured the search warrant, testified by affidavit that he suspected Scott and Taeyan were involved in Smothers' disappearance. Smothers' parents told investigators that Smothers was

11

scheduled to meet an individual named "Tae" and his uncle prior to his disappearance. J.A. 58. Police also learned that Smothers' storage facility had been accessed several times after his disappearance. And although Smothers had not accessed the facility, his pin was used to gain entry. In addition, the police had video evidence of a light-colored Nissan Altima, which Scott had rented, entering the storage facility. Law enforcement learned that Smothers' last phone pings were near Scott's house. Finally, police had other video evidence of the Altima following Smothers' rented Kia to the apartment complex where authorities later found Smothers' unoccupied vehicle.

Based on this information, Corporal Simms "requested a search and seizure warrant for the premises to locate Smothers, his remains, or his personal property." J.A. 61. The information not only justified the warrant; it also established exigent circumstances—the need for law enforcement to pursue Smothers' potential kidnappers and prevent the potential destruction of a large amount of stolen drugs. Because of these circumstances, the officers did not need to knock and announce before searching Scott's house. As a result, we affirm the district court's denial of Scott's motion to suppress. Law enforcement did not violate the Fourth Amendment or § 3109. Thus, we need not decide whether *Hudson* applies to a violation of § 3109. There was no violation to begin with.

2.

Next, Scott argues he is entitled to a two-level reduction to his sentence under U.S.S.G. § 4C1.1(a), which was promulgated after his sentencing. The government maintains that Scott is not entitled to the reduction. But, in any case, it insists that remand is not appropriate. According to the government, the appropriate means for Scott to seek a

12

§ 4C1.1 sentencing adjustment is through a motion under 18 U.S.C. § 3582. We agree with the government.

Section 4C1.1 was revised as part of Amendment 821 to the Sentencing Guidelines. In part, it provides for a two-level reduction in offense level for certain defendants with no criminal history points. *See* U.S. Sent'g Guidelines Manual app. C, amend No. 821, pt. B, subpart 1 (2023). Under § 4C1.1(a), a defendant is eligible for an adjustment in his offense level only if he meets all the listed criteria. *See* U.S.S.G. § 4C1.1(a) (clarifying that a defendant must meet "all of the following criteria."). Scott correctly contends that a § 4C1.1 reduction may be applied retroactively. *See* U.S.S.G. § 1B1.10(d). And he urges us to remand for the district court to apply § 4C1.1.

But Scott does not argue that the district court misapplied the Guidelines in effect at the time of Scott's sentencing. And "post-sentencing Guidelines amendments do not make a pre-amendment sentence unreasonable." *United States v. McCoy*, 804 F.3d 349, 353 (4th Cir. 2015). So, we decline to remand the case for the district court to consider Scott's § 4C1.1(a) argument.

That, however, does not mean Scott is without a remedy on this issue. Because Amendment 821 came into in effect after Scott's sentencing and applies retroactively, Scott can seek its benefit by moving for a sentence reduction under 18 U.S.C. § 3582(c)(2). Such a motion would allow the district court to assess in the first instance whether and how the amendment may impact Scott's sentence. For that reason, we need not remand for Scott to pursue relief in the district court; he can seek relief on his own. *See United States v. Brewer*, 520 F.3d 367, 373 (4th Cir. 2008); *see also* 18 U.S.C. § 3582(c)(2)("in the case of a

13

defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o), upon motion . . . or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.").

3.

Lastly, Scott challenges the district court's imposition of conditions of supervision requiring him to participate in substance abuse treatment and mental health counseling. According to Scott, the conditions unconstitutionally delegated discretionary authority to determine the nature and extent of his punishment to his probation officer.

"We review special conditions of supervision for abuse of discretion, recognizing that district courts have 'broad latitude' in this space" to impose conditions. *United States v. Van Donk*, 961 F.3d 314, 321 (4th Cir. 2020) (citation omitted). "A district court by definition abuses its discretion when it makes an error of law . . . such as by violating a constitutional right." *Id.* (citation and internal quotation mark omitted). And we review "constitutional non-delegation challenges to conditions of supervised release de novo." *United States v. Comer*, 5 F.4th 535, 547 (4th Cir. 2021) (citation and internal quotation mark omitted).

District courts have substantial discretion in setting the terms and conditions of supervised release after a term of imprisonment "within parameters set by both federal statutes and the Sentencing Guidelines." *United States v. Hamilton*, 986 F.3d 413, 417 (4th

14

Cir. 2021). And a defendant's assigned probation officer is necessary and important to the day-to-day management of supervised release. *Id*. "The district court and the probation officer work together with substantial statutory and Guidelines discretion in the crafting and management of supervised release." *Id.* at 418. But even in working together, the district court violates Article III of the Constitution if it delegates to probation officers a "core judicial function." *United States v. Ellis*, 112 F.4th 240, 253 (4th Cir. 2024) (citation omitted). For example, a district court cannot delegate "the authority to decide the amount of a fine or restitution payment, or whether a defendant must attend a treatment program." *Comer*, 5 F.4th at 547 (citation and internal quotation mark omitted). On the other hand, a district court does not violate Article III when it orders the broad principles that guide the conditions of release and permits the probation officer to "fill in many of the details necessary for applying the condition"; the district court retains the ultimate authority for the condition. *Id.* Consistent with that, courts may delegate to probation officers the "details with respect to the selection and schedule of the program." *Van Donk*, 961 F.3d at 327 (citation omitted).

With these standards in mind, we turn to the conditions Scott challenges here. At sentencing, the court orally pronounced:

> You must participate in a mental health treatment program and follow the rules and regulations of that program, and the probation officer, in consultation with the treatment provider, will supervise your participation in that program . . . . You also must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in that program.

J.A. 2567.

15

The written judgment provided:

> You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.) . . . .
>
> You must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

J.A. 2577.

The only pertinent difference in the oral and written pronouncements is the pair of clarifying parentheticals in the written judgment, which state that the probation officer's supervision includes the "provider, location, modality, duration, intensity, etc." of the mental health and substance abuse treatment programs. *Id*. That is the part Scott says improperly delegates judicial functions to his probation officer. Relying on *United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022), Scott claims the probation officer, under this written description of the condition, can decide whether he must participate in inpatient or outpatient treatment. That, according to Scott, is akin to performing the core judicial function of determining whether he should be confined.

We disagree. The district court established the broad principles of Scott's special conditions—that he must participate in mental health and substance abuse treatment programs. The court only permitted the probation officer to fill in certain details, such as the particular provider, location and schedule of the programs.

Likewise, we reject Scott's argument that the special conditions permit probation officers to decide whether in-patient treatment is required. Assuming without deciding that

16

such a delegation would constitute an improper delegation of judicial authority, we do not read the language Scott challenges to permit the probation officer to make such a decision. Instead, we read the special conditions to delegate only administrative supervisory responsibilities like the selection and schedule of the programs. Not only is that the best reading of the special condition; it also follows the guiding principle of constitutional avoidance. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."). Finding no delegation concern, we affirm the district court's imposition of the substance abuse and mental health conditions.

## III.

For the reasons stated above, the district court's judgments are,

*AFFIRMED*.