**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4169

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL SANCHEZ, a/k/a Danny Myrick,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Robert G. Doumar, Senior District Judge.  (2:03-cr-00184-RGD-FBS-1)

Argued:  May 8, 2018                                        Decided:  June 5, 2018

Before WILKINSON, TRAXLER, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Traxler and Judge Thacker joined.

**ARGUED:** Lawrence Hunter Woodward, Jr., RULOFF, SWAIN, HADDAD, MORECOCK, TALBERT & WOODWARD, P.C., Virginia Beach, Virginia, for Appellant.  Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Dana J. Boente, United States Attorney, Alexandria, Virginia,  William D. Muhr, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Daniel Sanchez was placed on supervision after serving a fifteen-year prison sentence for a federal firearm conviction pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Within three months, he had violated the terms of his supervised release by, among other things, threatening to kill his 14-year-old daughter and her mother. At his revocation hearing, Sanchez sought to contest the validity of his underlying sentence. The district court rejected this attempt on jurisdictional grounds and sentenced Sanchez to 13 months in prison and 47 months of supervised release. Because district courts lack jurisdiction in revocation proceedings to consider the validity of an underlying sentence, and because the new term of supervised release was in no way "plainly unreasonable," *United States v. Crudup*, 461 F.3d 433, 437 (4th Cir. 2006), we affirm.

## I.

We begin with a bit of procedural history. After Sanchez publicly beat the mother of his then-infant daughter while brandishing a firearm, he was arrested and pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The maximum sentence for this offense is 10 years imprisonment, with up to 3 years of supervised release. *See id.* §§ 924(a)(2), 3559(a)(3), 3583(b)(2). But because Sanchez had an extensive and violent criminal history, the Presentence Report (PSR) recommended that he be sentenced under ACCA. That statute mandates a 15-year minimum sentence for anyone convicted of Sanchez's offense who "has three previous convictions . . . for a violent felony." *Id.* § 924(e)(1). It also authorizes up to 5 years of supervised release.

The PSR listed approximately 30 prior convictions, many for violent offenses. It highlighted a few of these convictions in making its ACCA recommendation, including multiple Massachusetts convictions for Assault and Battery with a Dangerous Weapon and one Massachusetts conviction for Armed Assault with Intent to Murder. The PSR accordingly recommended a sentence of 180 to 188 months in prison and 3 to 5 years of supervised release. Sanchez did not object to the PSR.

After a hearing, the district court sentenced Sanchez under ACCA to 180 months imprisonment and 5 years of supervised release. Sanchez appealed his conviction and sentence, and we affirmed. *United States v. Sanchez*, 153 F. App'x 212 (4th Cir. 2005) (per curiam). Sanchez then filed a motion attacking his sentence under 28 U.S.C. § 2255. That, too, proved unsuccessful. *See United States v. Sanchez*, 254 F. App'x 205 (4th Cir. 2007) (per curiam).

While Sanchez was in prison, the Supreme Court held in *Johnson v. United States* that ACCA's residual clause was unconstitutionally vague. 135 S. Ct. 2551 (2015). The Court soon thereafter declared that its holding in *Johnson* applied retroactively. *Welch v. United States*, 136 S. Ct. 1257 (2016).[*]

That brings us to the present supervised release violation. On January 10, 2017, less than three months after he was released from prison, Sanchez called his 14-year-old daughter and threatened to "slap the shit" out of her, kill her mother, and harm her

---

[*] Sanchez and his attorneys chose not to challenge his original sentence via § 2255 at this time because Sanchez was just months away from completing his prison term.

brother and uncle. J.A. 81. That same day, he called and texted his daughter's mother, threatening to "smash and kill" her, her children, and her brother. J.A. 81. He was charged the following day in Virginia Beach with two counts of Disturbing the Peace/Threaten Bodily Harm.

Sanchez's probation officer filed a Petition on Supervised Release, alleging that these Virginia charges constituted a violation of the conditions of Sanchez's supervised release. One condition was that Sanchez "not commit another federal, state, or local crime." J.A. 73. The Petition on Supervised Release also alleged two additional supervised release violations: a failure to report as instructed and a failure to timely notify the probation officer of a change of residence. Sanchez contested each of these alleged supervised release violations.

At the revocation hearing, Sanchez argued that his original ACCA sentence was unconstitutional because his prior Massachusetts convictions for Assault and Battery with a Dangerous Weapon and Armed Assault with Intent to Murder no longer qualified as violent felonies post-*Johnson*. The district court declined to entertain this challenge, holding that it did not have jurisdiction to review Sanchez's original sentence in his supervised release revocation proceeding. After finding that Sanchez violated the terms of his supervised release, the district court sentenced him at the high end of the guidelines range (7 to 13 months) to 13 months in prison and 47 months of supervised release. Sanchez now appeals this 47-month term of supervised release.

II.

4

Sanchez contends initially that in order to challenge the reasonableness of his supervised release revocation sentence, he must be allowed to challenge the constitutionality of his underlying ACCA sentence. We reject this contention. A supervised release revocation hearing is not a proper forum for testing the validity of an underlying sentence or conviction.

Congress has provided a detailed roadmap to guide federal defendants who wish to contest the validity of their convictions or sentences. First, the defendant may appeal as of right to the court of appeals. *See* Fed. R. App. P. 4(b). If unsuccessful, he may petition the Supreme Court. *See* 28 U.S.C. § 1254(1). Should direct appeal prove futile, the defendant may attack his sentence collaterally under 28 U.S.C. § 2255. That provision, which was carefully designed to strike the balance between preserving finality and ensuring justice under law, sets forth meticulous rules governing such challenges. Unless a conviction or sentence is successfully challenged and overturned through this process, it is valid, and it stands.

Sanchez does not contend that he overturned his sentence through these designated channels. Indeed, he cannot. His conviction and sentence were affirmed on direct appeal, *Sanchez*, 153 F. App'x 212, and he was denied the relief he sought under § 2255, *Sanchez*, 254 F. App'x 205. Sanchez's sentence therefore remains valid, and the district court was correct not to entertain Sanchez's challenge to it.

Any holding to the contrary would not only skirt the efforts of Congress to provide a comprehensive route for challenging sentences but would also mark this circuit as an outlier of one. Every other circuit to have ruled on the question has held that a revocation

hearing is neither the time nor the place to entertain challenges to an underlying conviction or sentence. *See United States v. Miller*, 557 F.3d 910, 913 (8th Cir. 2009) (holding that a defendant may not "challenge the validity of his underlying conviction and sentence . . . in a supervised-release revocation proceeding"); *United States v. Lewis*, 498 F.3d 393, 395 (6th Cir. 2007) (holding that a defendant may not use an "appeal of the revocation of his supervised release to challenge the reasonableness of his original sentence"); *United States v. Warren*, 335 F.3d 76, 78 (2d Cir. 2003) ("[T]he validity of [the defendant's] sentence could not properly be raised in the supervised release revocation proceeding."); *United States v. Hofierka*, 83 F.3d 357, 363 (11th Cir. 1996) (per curiam) ("[A] supervised release revocation proceeding is not the proper forum in which to attack the conviction giving rise to the revocation."); *United States v. Gerace*, 997 F.2d 1293, 1295 (9th Cir. 1993) ("An appeal challenging a probation revocation proceeding is not the proper avenue through which to attack the validity of the original sentence."); *United States v. Torrez-Flores*, 624 F.2d 776, 780 (7th Cir. 1980) ("[A]n appeal from a probation revocation is not the proper avenue for a collateral attack on the underlying conviction."); *United States v. Francischine*, 512 F.2d 827, 828 (5th Cir. 1975) ("[T]he underlying validity of a conviction cannot be asserted as a defense in a probation revocation proceeding.").

The Second Circuit's reasoning in *United States v. Warren* is illustrative. In that case, much like here, the defendant in a supervised release revocation proceeding sought to challenge the constitutionality of his underlying sentence. The Second Circuit declined to entertain it. Refusing to consider such a challenge, the court noted, "furthers the

important interest of promoting the finality of judgments." *Warren*, 335 F.3d at 78. It is also consistent with the "detailed scheme" Congress has designed for criminal appeals, which introduces "various substantive and procedural limitations as the legal and temporal distance from the trial or guilty plea increases." *Id.* at 79. Short-circuiting this scheme would not only "lead to endless confusion over the nature of the claims that could be made" but would also "be unfair to those defendants who do not violate the terms of their supervised release." *Id.*

Our own nonprecedential decisions have reached the same conclusion. *See United States v. Easterling*, 481 F. App'x 812, 813 (4th Cir. 2012) (per curiam) (holding that the defendant's "underlying conviction could not be attacked at the supervised release revocation hearing"); *United States v. Carter*, 468 F. App'x 351, 352 (4th Cir. 2012) (per curiam) (holding that the defendant could not "challenge the validity of his underlying conviction" when appealing the revocation of his supervised release); *United States v. Neal*, 458 F. App'x 246, 248 (4th Cir. 2011) (per curiam) (holding that the defendant could not "collaterally attack" his underlying conviction in a supervised release revocation proceeding).

Relatedly, this court has held that a defendant may not challenge the special conditions of his original term of supervised release during later revocation proceedings. *United States v. Johnson*, 138 F.3d 115, 117-18 (4th Cir. 1998). Revocation, we explained, simply was not the time for such a challenge. The defendant should instead "have raised his objections in a timely appeal of that initial sentence." *Id.* at 118.

Insisting that defendants use the correct process to challenge their convictions and sentences is not empty formalism. Courts "have a strong interest in preserving valid final judgments and not expending judicial resources on cases that upset those judgments." *United States v. Oliver*, 878 F.3d 120, 125 (4th Cir. 2017); *see Warren*, 335 F.3d at 78-79. Allowing defendants to raise yet another challenge to their convictions or to redo entire sentencing proceedings when supervised release is revoked would not only jeopardize that interest in finality but would also impose substantial burdens on district courts. Judges would be required to rehash issues in largely duplicative proceedings that are more remote in time from the initial trial and sentencing. The prospect of a partial or wholesale sentencing redo upon revocation would also risk diminishing the utility and attractiveness of supervised release as a sentencing tool. It would be wrong for the criminal justice system to suggest to judges that one relative advantage of lengthier prison terms would be to curtail the collateral attacks available to violators of supervised release. Finally, conferring procedural advantages on defendants who violate the terms of their supervised release while withholding them from those who do not is not only patently unfair but also skews incentives. *See Warren*, 335 F.3d at 79; *Francischine*, 512 F.2d at 829. "[R]ewarding those who flout our rules" in this way "threatens the integrity of our judicial system." *Oliver*, 878 F.3d at 125.

For the above reasons, the district court properly understood that it lacked jurisdiction to entertain Sanchez's challenge to the constitutionality of his underlying sentence.

III.

8

We do, of course, have jurisdiction to consider the discrete question properly presented here: whether Sanchez's new term of supervised release was "plainly unreasonable." *Crudup*, 461 F.3d at 437.

Sanchez clearly violated the terms of his supervised release. The district court found as much, and Sanchez does not challenge this finding on appeal. As noted, one condition of Sanchez's supervised release was that he "shall not commit another federal, state, or local crime." J.A. 73. Sanchez violated this condition when he threatened the lives of his 14-year-old daughter and her mother, thereby committing the Virginia offense of Disturbing the Peace/Threaten Bodily Harm. Another condition of Sanchez's supervised release was that he "shall report to the probation officer." J.A. 73. Sanchez violated this condition by failing to report as instructed on January 23, 2017. A third condition of Sanchez's supervised release was that he "shall notify the Probation Officer within 72 hours, or earlier if so directed, of any change in residence." J.A. 73. Sanchez's probation officer reported that Sanchez had violated this condition, as well.

Given these supervised release violations, the only question is whether the new term of supervised release imposed was plainly unreasonable. Sanchez argues that it was for two reasons. We find neither persuasive.

First, Sanchez argues that his new term of supervised release exceeds the term "authorized by statute" within the meaning of 18 U.S.C. § 3583(h). That statute provides that when a new term of supervised release is imposed "after imprisonment" upon revocation, that term "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any

9

term of imprisonment that was imposed upon revocation." Sanchez argues that because he was improperly classified as an armed career criminal at his original sentencing, the 5-year term of supervised release authorized by ACCA does not govern. Rather, Sanchez suggests that the proper point of comparison is the 3-year term that would have been authorized without the ACCA enhancement. Because his new term of supervised release exceeds 3 years, Sanchez contends that it was imposed in error.

This line of reasoning, however, is nothing more than an exercise in artful pleading. The linchpin of Sanchez's argument is that his original sentence was unconstitutional. But as we have just explained, such challenges may not be raised in revocation proceedings. Because Sanchez's original sentence has not been invalidated through the congressionally prescribed process, it remains binding in his revocation proceeding.

A straightforward application of § 3583(h), then, quickly disposes of Sanchez's challenge. Sanchez's original term of supervised release was imposed under ACCA. That statute authorizes a 5-year term of supervised release. Sanchez's revocation sentence, including both his 13-month term of imprisonment and his 47-month term of supervised release, does not exceed this limit. It therefore does not exceed the term "authorized by statute."

Sanchez next argues that further supervision is unnecessary and unjustified because he has already served an extra five years in prison on an unconstitutional sentence. Essentially, he suggests that his excess prison time should be credited to his revocation sentence.

But this argument suffers from the same fatal flaw as the first: it is but a thinly veiled attempt to get at the original sentence. The suggestion that Sanchez served excess time presupposes that his original sentence was not authorized under ACCA. Furthermore, the Supreme Court has held that "excess time served in prison" on a sentence later invalidated does not serve to reduce a defendant's term of supervised release. *United States v. Johnson*, 529 U.S. 53, 60 (2000). Offsetting supervised release in such circumstances, the Court explained, would thwart its rehabilitative objectives. "[U]nlike incarceration," supervised release "provides individuals with postconfinement assistance." *Id.* With respect to individuals like Sanchez who are finishing lengthy prison terms, it is meant to "ease the defendant's transition into the community." *Id.* at 59 (quoting S. Rep. No. 98-225, at 124 (1983)).

Sanchez has therefore provided us with no valid basis for declaring his revocation sentence plainly unreasonable. If anything, as the district court noted, it was "a very light sentence." J.A. 172. During the revocation hearing, the district court explained that it was "very, very concerned about the threat to the mother and to the daughter in this case." J.A. 150. It emphasized the severity of the death threats Sanchez made and the need to protect Sanchez's daughter and her mother, who were "genuinely scared." J.A. 147. Sanchez made these threats not three months after he was placed on supervision, and they were but the latest in a long list of increasingly violent criminal offenses. That list includes multiple prior domestic violence offenses, as well as prior death threats. It also includes numerous probation violations. Against these considerations, the district court weighed Sanchez's history of mental illness, including paranoia and post-traumatic stress

11

disorder. In light of all these considerations, we cannot say that the term of supervised release imposed by the district court was unreasonable, much less plainly so.

## IV.

For the aforementioned reasons, the judgment of the district court is

*AFFIRMED*.