**<u>PUBLISHED</u>**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-4261**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

JOHN MCLAURIN,

        Defendant – Appellant.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, Senior District Judge.  (1:12-cr-00348-JKB-4)

---

Argued:  October 24, 2025                                  Decided:  March 6, 2026

---

Before NIEMEYER, GREGORY, and BERNER, Circuit Judges.

---

Vacated and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Berner joined.  Judge Niemeyer wrote a dissenting opinion.

---

**ARGUED:**  Cullen Oakes Macbeth, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Erek S. Barron, United States Attorney, David C. Bornstein, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

GREGORY, Circuit Judge:

John McLaurin appeals the revocation of his supervised release based on violations of standard conditions that were in his original written judgment, but were not pronounced orally at his original sentencing. Under *United States v. Rogers*, 961 F.3d 291, 296–99 (4th Cir. 2020), a district court must orally pronounce all non-mandatory conditions of supervised release at the sentencing hearing. Any discretionary supervised release conditions that appear for the first time in the written judgment are nullities. Accordingly, we vacate the revocation judgment and remand for resentencing.

## I.

On October 16, 2012, Appellant John McLaurin pled guilty to conspiracy to possess with the intent to distribute more than five kilograms of cocaine. In exchange for the government's agreement to recommend a sentence of 120 months, McLaurin agreed to the following appellate waiver:

> The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal a sentence of greater than 120 months imprisonment….

JA 34.

In a presentence investigation report, the probation officer recommended that the district court impose "[t]he mandatory and standard conditions of supervision adopted by

2

the Court" and four special conditions. JA 122. These four special conditions were: (1) that McLaurin participate in a substance-abuse treatment program, (2) that he participate in a "vocational or educational program," (3) that he not consume alcohol, and (4) that he participate in "a mental health treatment program." *Id.*

On January 18, 2013, the court held an oral sentencing and sentenced McLaurin to 120 months of imprisonment and five years of supervised release. During this sentencing hearing, the court orally recited the four special conditions of release that it was imposing. The court did not recite or mention any "standard" supervised release conditions.

Later that day, the court entered a written judgment containing the four special conditions of supervised release. The same judgment also contained six mandatory conditions, such as the condition that McLaurin not illegally use or possess a controlled substance. In addition, the judgment contained fourteen "standard" supervised release conditions. Relevant here, standard condition six provided that McLaurin "shall notify the probation officer ten days prior to any change in residence or employment," and standard condition ten provided that he "shall permit a probation officer to visit him . . . at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer." JA 73.

McLaurin was released from prison and began serving his term of supervision on February 18, 2022. On October 31, 2023, a probation officer submitted a "Petition on Supervised Release" to the district court, alleging the following violations of McLaurin's supervised release conditions:

3

(1) that McLaurin tested positive for THC and admitted to using THC on February 18, 2022, in violation of mandatory conditions 2 and 3 prohibiting the use and possession of a controlled substance;

(2) that McLaurin failed to appear for his substance abuse assessment appointments and failed to report for drug testing in March, May, June, and July, in violation of special condition 1 on participation in a substance abuse treatment program;

(3) that McLaurin failed to appear for a home visit scheduled by the probation officer on August 9 and September 20, 2023, in violation of standard condition 10 regarding compliance with home visits; and

(4) that McLaurin failed to alert the probation officer of a change of address, in violation of standard condition 6.

JA 125–27.

On May 7, 2024, the court held a revocation hearing. McLaurin had agreed to admit to violations five and six, relating to the failed home visits in August and September, and the government had agreed to dismiss all other violations. Parties acted consistently with the agreement, and the district court revoked McLaurin's supervised release. The government requested 90 days of incarceration while McLaurin requested a sentence of time served. The court sentenced McLaurin to 90 days of imprisonment, followed by an additional 42 months of supervised release "with the exact same terms and conditions as were imposed on the defendant previously." JA 94–98. McLaurin did not object to the supervised release conditions in his original written judgment, and neither did McLaurin object to the imposition of the same conditions in his new term of supervised release.

The court entered judgment on May 7, 2024. McLaurin brings this appeal.

4

## II.

This appeal raises three issues:  whether McLaurin waived his right to appeal this issue as a part of his plea bargain, whether his appeal is timely and procedurally proper, and whether the district court judgment survives plain-error review.  We first conclude that the appellate waiver does not bar the *Rogers* challenge based on an examination of its plain language.  Second, this appeal was timely and procedurally proper under *United States v. Brantley*, 87 F.4th 262 (4th Cir. 2023), and *United States v. Newby*, 91 F.4th 196 (4th Cir. 2024).  Finally, under plain-error review, the district court erred when it revoked supervised released based on conditions that, under *Rogers*, were never imposed.

## A.

The Government contends that the appellate waiver in McLaurin's plea bargain prohibits McLaurin from contesting the revocation of his supervised release.  The interpretation of a plea agreement is a question we review *de novo*.  *United States v. Bowe*, 257 F.3d 336, 342 (4th Cir. 2001).

Plea agreements are generally guided by contract principles.  *United States v. Edgell*, 914 F.3d 281, 287 (4th Cir. 2019).  Thus, we are to "look to the plain language of the agreement, construing it in the ordinary sense."  *United States v. Boutcher*, 998 F.3d 603, 608 (4th Cir. 2021).  However, because "plea agreements necessarily implicate a defendant's constitutional rights . . . we hold the government, which has a greater negotiating position, to a higher standard for any imprecise language or ambiguity that appears in plea agreements."  *Id.*; *see United States v. Under Seal*, 902 F.3d 412, 417–18 (4th Cir. 2018) ("[A]mbiguities in a plea agreement are construed against the government

5

as its drafter."). Nonetheless, "[i]f the plea agreement is unambiguous as a matter of law, and there is no evidence of governmental overreaching, we should interpret and enforce the agreement accordingly." *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007).

Here, the appellate waiver reads:

> The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, ***to appeal whatever sentence is imposed*** (***including the right to appeal any issues that relate to*** the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and ***the decision whether to impose and the calculation of any*** term of imprisonment, fine, order of forfeiture, order of restitution, and ***term or condition of supervised release***), <u>except</u> as follows: (i) the Defendant reserves the right to appeal a sentence of greater than 120 months imprisonment….

JA 34 (emphasis added).

Although the Government would characterize this language of a waiver of "'any issues' that even 'relate to' his supervised release conditions," Government's Brief at 13, that is not what the plain language states. Rather, the waiver specifically bars McLaurin from appealing *imposed* sentences and the *decision to impose* terms of supervised release. This specificity is significant because a *Rogers* challenge is distinct from a challenge to imposed sentences. *Rogers* deals with the validity of conditions that were never properly imposed: *Rogers* held that when discretionary supervised release conditions appear for the first time in written judgment, they are "nullities; the defendant has not been sentenced to those conditions[.]" *United States v. Singletary,* 984 F.3d 341, 344 (4th Cir. 2021) (citing *United States v. Rogers*, 961 F.3d 291, 295 (4th Cir. 2020)) ("In *Rogers*, we established that because a defendant has a right to be present when he is sentenced, a district court must orally pronounce all non-mandatory conditions of supervised release at the sentencing

6

hearing."). Under *Rogers*, McLaurin's challenged conditions of supervised release were never imposed at all because they were never orally pronounced at sentencing.

To put it another way, McLaurin is not appealing his 2013 sentence or its related conditions. He is appealing the 2024 revocation of his supervised released based on invalid and null conditions. The appellate waiver does not contain plain language covering such an appeal, and all ambiguities must be construed against the government. *Under Seal*, 902 F.3d at 417–18; *see also Singletary*, 984 F.3d at 345 (finding that an appellate waiver of "whatever sentence is imposed" does not prohibit a *Rogers* claim on appeal).

The Government's reliance on general case law regarding appellate waivers is unavailing. The Government cites a series of cases for the argument that when a defendant generally waives his appellate rights to challenge a sentence, the waivers extend to supervised released conditions as well. Government's Brief at 13–14 (citing *United States v. Copeland*, 707 F.3d 522 (4th Cir. 2013); *United States v. Crews*, No. 23-4581, 2024 WL 2362207 (4th Cir. May 23, 2024); *United States v. Boone*, 801 F. App'x 897 (4th Cir. 2020); *United States v. Akinto*, 770 F. App'x 86 (4th Cir. 2019); *United States v. Ballard*, 491 F. App'x 374 (4th Cir. 2012)). But none of these cases deal with appeals regarding *Rogers* challenges and instead pertain to direct appeals regarding the substance of a properly imposed supervised release condition. Moreover, the only published case that the Government cites, *Copeland*, explicitly recognizes that an "appeal waiver does not always preclude an appeal." 707 F.3d at 530. Rather, a defendant can successfully bring a challenge despite an appeal waiver when the challenge "involves fundamental issues, including claims that a district court exceeded its authority, premised its sentence on a

7

constitutionally impermissible factor . . . or violated [a post-plea constitutional right]." *Id.* (cleaned up) (citing *United States v. Thornsbury*, 670 F.3d 532, 539 (4th Cir. 2012)). No doubt, the revocation of supervised release based on conditions that were never properly imposed is a claim that a district court exceeded its authority. McLaurin's appellate waiver does not extend to the facts of this appeal.

## B.

The Government makes three further procedural arguments: (1) that McLaurin's appeal is barred by the law of the case doctrine, (2) that the appeal is untimely, and (3) that the appeal is barred by precedent which prevents a defendant from attempting to challenge release conditions after a violation has been found. Because the Government fails to account for the special nature of a *Rogers* challenge and because *Rogers* applies retroactively under *Brantley* and *Newby*, these arguments are unavailing.

First, the Government improperly relies on the law of the case doctrine. This doctrine states that issues decided in earlier stages of a litigation must continue to control throughout later stages. *United States v. Bell*, 988 F.2d 247, 250 (4th Cir. 1993). This doctrine extends to issues that could have been raised in a previous appeal, but which were not raised and are therefore considered forgone. *See Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007). Indeed, the Court has stated "[a] supervised release revocation hearing is not a proper forum for testing the validity of an underlying sentence or conviction." *United States v. Sanchez*, 891 F.3d 535, 538 (4th Cir. 2018). Accordingly, the Government argues that because McLaurin did not challenge his supervised release conditions in 2013, these

8

conditions have become the law of the case and must control throughout his revocation procedure.

The Government misunderstands *Rogers*. *Rogers* holds that a discretionary condition not pronounced at oral hearing is a nullity—in other words, such a condition *never became the law of the case*. The Government cites to *United States v. Brantley* for the contention that a "judgment with a *Rogers* error, just as any other judgment, is valid until corrected on appeal or amended by the district court." 87 F.4th 262, 266 (4th Cir. 2023). But a valid judgment should not be confused with a valid condition. *Brantley* goes on to reiterate that a judgment can be valid despite containing nullities. *Id.* at 266. At no point does *Brantley* purport to overturn the *Rogers* holding that conditions appearing for the first time in a written judgment are nullities. To the contrary, *Brantley* continues to recognize that *Rogers* errors occur, while distinguishing a valid judgment from a valid condition of release. *See id.*

Second, the Government argues that the challenge is untimely under Federal Rule of Appellate Procedure 4(b)(1)(A), which provides that a defendant's notice of appeal must be filed in the district court within 14 days of entry of the judgment being appealed. McLaurin did not appeal the inclusion of the written conditions of supervised release when the written judgment was issued in 2013. Indeed, defendants who raise *Rogers* errors are not "excused from the usual timeliness for filing a notice of appeal." *Brantley*, 87 F.4th at 264. There is no "freestanding right to ask an appellate court to correct even the most obvious *Rogers* error." *United States v. Newby*, 91 F.4th 196, 199 (4th Cir. 2024). For that reason, defendants raising *Rogers* challenges must have a "procedurally appropriate

9

mechanism" for raising the issue past the initial appeal deadline. *Id.* Such a procedurally appropriate mechanism may be the appeal of a judgment that is "infected by the initial *Rogers* error." *Id.* (finding, for example, that appeal of an amended judgment was an appropriate mechanism through which to raise the *Rogers* error from the original judgment, even though the defendant did not raise a *Rogers* error at the time of the initial sentencing in 2008).

Here, McLaurin employs that procedurally appropriate mechanism for raising a *Rogers* challenge. As an initial matter, McLaurin had no grounds to appeal the *Rogers* error in his 2013 sentencing appeal because *Rogers* was not decided until 2020. Thus, the fact that McLaurin did not raise a *Rogers* challenge in 2013 cannot be seen as a forfeit or waiver of his right to challenge the written conditions that were not orally imposed. *See United States v. Cannady*, 63 F.4th 259, 267 (4th Cir. 2023) (finding that a party can "not forfeit or waive any objection" based on a decision that "this Court did not issue . . . until after" the initial round of litigation).

The dissent faults McLaurin for failing to raise a *Rogers* error after *Rogers* was decided in 2020. *See* Dissent Op. at 6. But *Brantley* and *Newby* would have barred McLaurin from freely raising the *Rogers* challenge at that time because he has no "freestanding right" to appeal a *Rogers* error absent a "procedurally appropriate mechanism." *Newby*, 91 F.4th at 199. However, the 2024 revocation hearing became McLaurin's "procedurally appropriate mechanism" to raise a *Rogers* challenge because it was a hearing that was "infected by the initial *Rogers* error." *Id.* And McLaurin timely utilized that mechanism to raise this challenge. In relation to the 2024 revocation hearing,

10

McLaurin adhered to Rule 4, filing a notice of appeal two days after the district court entered judgment.

Finally, the Government's reliance on case law is unpersuasive. The Government invokes *Johnson* and *Whitley* for the idea that a defendant "cannot wait for a revocation hearing to challenge the validity of the underlying supervised release conditions." Government's Brief at 21 (citing *United States v. Johnson*, 138 F.3d 115 (4th Cir. 1998) and *United States v. Whitley*, 841 F. App'x 631, 632 (4th Cir. 2021)). But neither case involves a *Rogers* error. Indeed, because there is no freestanding right to raise a *Rogers* challenge and because defendants raising *Rogers* challenges need a "procedurally appropriate mechanism," for many defendants who were sentenced before 2020, a revocation hearing is one of the few means by which they can raise a *Rogers* challenge. Thus, when dealing with a *Rogers* error, it cannot be true that a defendant "cannot wait for a revocation hearing" to challenge the null conditions. Rather, under *Brantley* and *Newby*, sometimes a defendant *can only* wait for a revocation or similar hearing in order to do so.[*]

## C.

McLaurin did not object to the revocation of his supervised release under *Rogers* at the underlying hearing. Because he did not preserve this issue, we review the district court's decision for plain error. *United States v. Lynn*, 592 F.3d 572, 580 (4th Cir. 2010).

---

[*] Although a defendant may raise a *Rogers* challenge only when procedurally permitted, a district court need not wait for a revocation hearing to correct a so-called *Rogers* error. This is because district courts are free to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release . . . ." 18 U.S.C. § 3583(e)(2); *see also*, United States Sentencing Commission, Guideline Manual, §5D1.4(a).

11

Under this standard, a defendant must show that: "(1) an error occurred; (2) the error was plain; and (3) the error affected [his] substantial rights." *United States v. Bennett*, 986 F.3d 389, 397 (4th Cir. 2021). If these three prongs are met, then we correct the error "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018).

First, an error occurred when the district court revoked McLaurin's supervised release based upon conditions that were null under *Rogers*. Specifically, the district court sentenced McLaurin to 90 days of incarceration followed by 42 months of supervised release upon finding that McLaurin had violated the standard conditions relating to home visits. These standard conditions were that McLaurin "shall notify the probation officer ten days prior to any change in residence or employment," and that he "shall permit a probation officer to visit him . . . at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer." JA 73. These conditions were contained in McLaurin's written judgment, but they were never pronounced orally at McLaurin's sentencing, and nor were they referenced at the sentencing. These conditions may have been "standard," but they were not mandatory. Thus, under *Rogers*, the failure to pronounce these conditions orally render them "nullities" to which McLaurin was never sentenced. *Singletary*, 984 F.3d at 344; *Rogers*, 961 F.3d at 295. The district court lacked authority to revoke supervised release based on conditions that were never imposed. 18 U.S.C. § 3583(e)(3).

Second, the error was plain. There is no ambiguity in the application of *Rogers*. The Government argues that McLaurin's discretionary conditions became a part of his

12

sentence when he failed to appeal those conditions, relying on the law of the case doctrine. However, for all the reasons stated in Section II(B), the law of the case doctrine is inapplicable here, and McLaurin cannot be faulted for failing to raise a *Rogers* challenge before *Rogers* was even decided. *See United States v. Cannady*, 63 F.4th 259, 267 (4th Cir. 2023) ("We will not penalize [defendant] for not objecting to an issue that did not become available until years after the imposition of his original sentence . . .").

Third, the error impacted McLaurin's substantial rights, causing McLaurin to be sentenced to imprisonment and an extended term of supervised release. The Government argues that the error resulted in no prejudice to McLaurin because the "record shows that McLaurin committed additional violations, including being out of communication with his probation officer for eight months, and being in possession and use of controlled substances." Government's Brief at 27. However, the referenced "record" is merely the probation officer's petition on supervised release and the accompanying officer report. Because McLaurin admitted to the violations pertaining to the failed home visits in exchange for the government's agreement to dismiss all other violations, the district court never made findings of fact regarding whether McLaurin had committed the other violations.

Moreover, this Court has held that when assessing prejudice from an invalid conviction, courts ask "whether it is likely a defendant, had he known of the error, would not have pled guilty to the count of conviction." *United States v. McKinney*, 60 F. 4th 188, 196 (4th Cir. 2023). Courts "do not look to whether it is likely a defendant, had he known of the error, would not have pled guilty to a dismissed count." *Id.*; *accord United States v.*

13

*Doswell*, 670 F.3d 526, 531 (4th Cir. 2012) (finding, in a harmless error analysis on a revocation of supervised release, that the relevant inquiry was what the district actually based its revocation upon, and not what it could have alternatively based its revocation upon). The same principle applies here. It would be improper to find that McLaurin's substantial rights were not affected simply because he could have had his release revoked based on another violation.

Finally, the error implicates the fairness, integrity, and public reputation of judicial proceedings. The Government argues that McLaurin's appeal relies on "simple formalism" and that he is seeking a "windfall" based on a "technical" error. Government's Brief at 30. Far from it, a *Rogers* challenge implicates the liberty and due process rights of defendants. The nullification of conditions that were not pronounced orally before the defendant ensures that defendants can "object to conditions that are not tailored to their individual circumstances and ensures that they will be imposed only after consideration of the factors set out in § 3583(d)." *Rogers*, 961 F.3d at 300. Appeals such as this one are about the vindication of that right and necessarily implicate the integrity of judicial proceedings.

The dissent objects that McLaurin's agreement to admit to violations of the standard conditions invited the error of the district court. Dissent Op. at 16. But that position suggests that whenever a defendant admits to wrongdoing, he invites whatever erroneous sentence the court imposes. In such a world, defendants would cease admitting to any violation for fear of losing the ability to appeal errors of the court. That would impede both the efficacy and the integrity of our system. To avoid such an outcome, we cannot treat McLaurin's agreement to admit to the standard violations as inviting the error of the court.

14

At the same time, the probation officer and the district court accepted McLaurin's plea agreement based on the assumption that the standard conditions he admitted to violating had been properly imposed. Because we have found that those standard conditions were not properly imposed, this fundamental assumption no longer holds up the plea agreement and the agreement is invalid. For that reason, we not only vacate the revocation judgment but remand this case for a resentencing on the revocation matter.

## III.

Defendant's appellate waiver does not prohibit him from challenging his revocation proceedings based on null supervised release conditions. Defendant timely and properly raised this *Rogers* challenge through an appeal of his revocation hearing. The district court's revocation of supervised release was plain error under *Rogers*. For the foregoing reasons, we vacate the revocation judgment and remand for revocation resentencing.

*VACATED AND REMANDED*
*FOR RESENTENCING*

NIEMEYER, Circuit Judge, dissenting:

In this appeal of a supervised-release revocation judgment, John McLaurin contends that the two conditions of his supervised release that he admitted violating were actually "nullities" under our holding in *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020), because they were discretionary conditions that were not orally announced at his January 18, 2013 sentencing hearing and instead only appeared for the first time later that same day when the court issued its written judgment. He thus argues that, even though he absconded from supervision for months, the 2013 conditions prohibiting him from doing so were "nullities" and therefore that the revocation of his supervised release based on his violation of those conditions must be vacated and the revocation proceeding dismissed. In short, McLaurin wants us now to open and review his 2013 judgment to find that the standard conditions of supervised release listed therein cannot be enforced against him and then conclude that his entire revocation proceeding was illegal.

The problems with McLaurin's argument, however, are manifold. First, he never objected to the 2013 conditions of supervised release that are now being enforced or sought to have them removed from his judgment, and he has provided no authority for us now to open and review that judgment, which has become final and binding. He also never objected to those conditions in this revocation proceeding when they were enforced against him to revoke his supervised release. Instead, he waited to mount his challenge to the validity of the conditions for the first time in this appeal. Indeed, yet more difficult for him, he entered into a plea agreement in this revocation proceeding in which he agreed that his violation of two of the standard conditions of his supervised release in his 2013

16

judgment should form the basis for a stipulated revocation, which the court then accepted and entered in this case. That agreement was given in exchange for the agreement by the probation officer and the government to drop charges that he had violated three other conditions of supervised release, all of which were undisputably not tainted by any *Rogers* error. Thus, by his agreement, McLaurin *invited* the district court's reliance on the two standard conditions to support revocation and then, on appeal, seeks to have those conditions declared nullities and his revocation proceeding dismissed.

The majority opinion buys McLaurin's argument "hook, line, and sinker" in what amounts to a super-activistic disregard of binding precedents. Apparently recognizing, however, that ordering a resentencing to correct the alleged *Rogers* error would be absurd for numerous reasons of finality, the majority instead orders "a resentencing on the revocation matter," which no one contends was flawed. *Ante* at 15. Thus, the majority's analysis of the 2013 sentencing can only be dicta. Even so, as I explain, our clear precedents require the rejection of McLaurin's arguments and the majority's approach because we have no jurisdiction to open his 2013 judgment and, in any event, he cannot satisfy the requirements of plain-error review with the error that he invited.

I

In 2012, John McLaurin was charged with drug-trafficking, robbery, and the illegal possession of a firearm. Pursuant to a plea agreement, he pleaded guilty to one drug-trafficking count and waived his right to appeal "whatever sentence [was] imposed," including "the right to appeal any issue[]" relating to a "term or condition of supervised

17

release." Pursuant to the plea agreement, the government then dismissed the remaining counts. The presentence report prepared for McLaurin's sentencing recommended that, as part of his supervised release, the court impose "[t]he mandatory and standard conditions of supervision adopted by the Court," as well as four special conditions — namely, that McLaurin (1) participate in a substance-abuse treatment program; (2) participate in a vocational or educational program; (3) abstain from alcohol; and (4) participate in a mental-health treatment program.

At sentencing, neither party objected to the presentence report, and the district court explicitly adopted it before imposing sentence. Thereafter, the court sentenced McLaurin to 120 months' imprisonment and imposed a five-year term of supervised release. While the court said nothing further about the mandatory or standard conditions of supervised release, it orally announced the four special conditions recommended by the probation officer, noting that the justification for each was set out in the presentence report.

McLaurin's final written judgment, issued on January 18, 2013, thus required McLaurin to serve five years of supervised release subject to (1) the mandatory conditions required by statute; (2) the standard conditions of supervised release, which closely tracked the standard conditions recommended by the Sentencing Guidelines, U.S.S.G. § 5D1.3(c) (2013); and (3) the four special conditions that the court orally pronounced at sentencing.

McLaurin appealed the 2013 judgment with a brief prepared by his counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and McLaurin himself filed a pro se brief raising additional issues. Neither McLaurin nor his counsel, however, raised any issue with respect to the conditions of his supervised release, and we affirmed the judgment. *See*

18

*United States v. McLaurin*, 608 F. App'x 150 (4th Cir. 2015) (per curiam). The judgment thus became final.

McLaurin was released from prison on February 18, 2022, and began serving his 5-year term of supervised release.

In October 2023, McLaurin's probation officer commenced a revocation proceeding against McLaurin, charging him with six violations of his conditions of supervised release — violations of two mandatory conditions, violations of two standard conditions, and two violations of a special condition. In particular, the revocation petition alleged (1) that he failed a drug test, in violation of a mandatory condition; (2) that he possessed a controlled substance, in violation of another mandatory condition; (3) that he failed to appear for two substance abuse assessment appointments, in violation of a special condition; (4) that he failed to report an additional five times for testing, as required by that special condition; (5) that he twice willfully neglected to make himself available for scheduled home visits, in violation of standard condition 10, which required him to permit the probation officer to visit him at any time; and (6) that he failed to notify the probation officer that he had moved from his residence to an unknown location, in violation of standard condition 6, which required him to notify the probation officer before changing residences. McLaurin's whereabouts were unknown when these revocation charges were filed, and the probation officer therefore initiated the issuance of an arrest warrant. McLaurin was not taken into custody until over five months later.

Prior to the May 2024 revocation hearing, the government, the probation officer, and McLaurin reached a settlement agreement of the revocation proceeding, under which

19

McLaurin would admit to charges 5 and 6 — based on his absenting himself from his residence prior to scheduled home visits and failing to notify the officer of his change of location, in violation of standard conditions 10 and 6 — and the government and the probation officer would then dismiss the remaining charges.

At the revocation hearing, the district court accepted McLaurin's admissions and the parties' agreement, finding that McLaurin had violated standard conditions 10 and 6 of his supervised release, as alleged in charges 5 and 6, respectively. The court accordingly revoked McLaurin's supervised release and imposed a below-Guidelines sentence of 90 days' imprisonment, together with a new 42-month term of supervised release — the balance of his original 60-month term at the point he absconded from supervision — subject to the same conditions as before. Other than arguing for a time-served sentence of imprisonment, McLaurin made no objection during the revocation hearing to any portion of the proceeding and, in particular, no objection to the original 2013 conditions of supervised release or, indeed, to the new conditions of supervised release, which were identical.

The record thus shows that before appealing to us:

- McLaurin never objected to his presentence report's recommendation of the mandatory and standard conditions of supervised release, as well as four special conditions.

- He made no objection to the conditions of supervised release imposed on him during his 2013 sentencing and in the judgment.

20

- He expressly waived his right to appeal any issue relating to the conditions of his supervised release in his 2013 plea agreement.

- He raised no issue on appeal from the 2013 judgment challenging the conditions of supervised release contained in the written judgment, and the judgment was affirmed and became final.

- He never asked the district court, after *Rogers* was decided in 2020, to amend his judgment to remove the standard conditions of supervised release on the ground that they had not been orally pronounced. *See* 18 U.S.C. § 3583(e)(2) (authorizing the district court to modify conditions of supervised release); Fed. R. Crim. P. 32.1(c).

- He made no objection during this 2024 revocation proceeding to challenge the 2013 conditions of his supervised release.

- He agreed, to the contrary, that standard conditions 6 and 10 would be the basis for revocation, and the district court adopted and applied that agreement.

- He has made no objection to the identical conditions of supervised release imposed on him in the revocation judgment.

From the district court's revocation judgment dated May 7, 2024, McLaurin filed this appeal, challenging for the first time the conditions of his 2013 supervised release. As noted, however, he did not challenge the conditions of his supervised release of his revocation sentence, nor any other aspect of that sentence.

21

II

McLaurin contends that we should vacate the district court's revocation judgment and remand with instructions to dismiss the revocation proceeding. He argues that this relief is justified because the revocation of his supervised release was based on his violation of two standard conditions of supervised release contained in his 2013 judgment that were not announced orally at sentencing and therefore were a nullity under our 2020 decision in *Rogers*. *See* 961 F.3d at 296; *see also United States v. Singletary*, 984 F.3d 341, 344–45 (4th Cir. 2021).

The government opposes McLaurin's argument on multiple grounds, urging that the district court be affirmed. First, it notes that "[i]n exchange for receiving a cap on the government's sentencing recommendation, McLaurin agreed to waive all appellate rights," including "waiver of 'any issues that relate to' a term or condition of supervised release." Second, it contends that the appeal must be dismissed as "violative of the law of the case." Third, it contends that McLaurin is "raising claims about supervised release conditions imposed more than a decade ago, which is clearly outside the time limits imposed by" Federal Rule of Appellate Procedure 4, and therefore that we "lack[] jurisdiction over this appeal," which essentially challenges his 2013 judgment. Finally, it contends that McLaurin has failed to satisfy the criteria for correction of the alleged error on plain-error review.

Thus, the core issue in this appeal is whether, based on an alleged *Rogers* error in his original 2013 judgment, the revocation judgment must be vacated. McLaurin agrees

22

that because he raises this issue for the first time on appeal, our review is under the plain-error standard. *See* Fed. R. Crim. P. 52(b); *Greer v. United States*, 593 U.S. 503, 507–08 (2021). Under that standard, a defendant must demonstrate not only a plain error that affected his substantial rights, but also that we should exercise our discretion to correct the error because it would have "a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Greer*, 593 U.S. at 508 (cleaned up).

## III

First, it is readily apparent that we simply have *no jurisdiction* to grant McLaurin the relief he requests. To assess and review McLaurin's underlying 2013 judgment in this revocation appeal, we would have to be able to open that long final judgment as part of our review of the revocation judgment. Yet, in *United States v. Sanchez*, we held that "[a] supervised release revocation hearing is not a proper forum for testing the validity of an underlying sentence or conviction." 891 F.3d 535, 538 (4th Cir. 2018).

In *Sanchez*, the defendant attempted to argue at his revocation hearing that his original sentence was unconstitutional, and when the district court held that it could not consider that kind of argument in a revocation proceeding, he argued on appeal that "in order to challenge the reasonableness of his supervised release revocation sentence, he must be allowed to challenge the constitutionality of his underlying . . . sentence." 891 F.3d at 538. We squarely rejected that argument, however. We explained that "Congress has provided a detailed roadmap" for those defendants who want to appeal their original judgments, noting that any appeal had to be taken under Rule of Appellate Procedure 4(b)

23

and that further review to the Supreme Court could be taken under 28 U.S.C. § 1254(1). *Id.* Moreover, we noted, a defendant could also attack the judgment collaterally under 28 U.S.C. § 2255. *Id.* We explained that these specific procedures strike a careful balance "between preserving finality and ensuring justice under law." *Id.* And until a judgment is successfully challenged and overturned through those avenues, "it is valid, and it stands." *Id.* We also pointed out that "*[e]very other circuit* to have ruled on the question ha[d] held that a revocation hearing is neither the time nor the place to entertain challenges to an underlying conviction or sentence." *Id.* at 538–39 (emphasis added) (collecting cases). We thus concluded that in a revocation proceeding, "district courts *lack jurisdiction . . .* to consider the validity of an underlying sentence." *Id.* at 537 (emphasis added); *see also United States v. Johnson*, 138 F.3d 115, 117 (4th Cir. 1998) (concluding in the appeal of a revocation judgment that "*we lack jurisdiction* over [the defendant's] . . . argument challenging various special conditions of his supervised release" contained in the underlying judgment (emphasis added)).

Moreover, we have held specifically that a judgment with a *Rogers* error is not an exception to this principle — rather, "[a] judgment with a *Rogers* error, just as any other judgment, is valid until corrected on appeal or amended by the district court." *United States v. Brantley*, 87 F.4th 262, 266 (4th Cir. 2023). Thus, the presence of a *Rogers* error in a final judgment does not automatically invalidate the judgment — or give a defendant license to ignore its terms. Instead, the defendant must comply with the "binding," "presumptively valid" judgment until it is either amended by the district court or corrected on appeal, *id.*, which, we have held, requires "a procedurally appropriate mechanism for

24

raising the [*Rogers*] issue," *United States v. Newby*, 91 F.4th 196, 199 (4th Cir. 2024). And, contrary to the majority's bald assertion in disregard of *Sanchez* and similar cases, *see ante* at 10–11, a revocation proceeding is most certainly *not* an appropriate procedural mechanism for raising the issue, as it is a challenge to the validity of the underlying judgment. *See Sanchez*, 891 F.3d at 537.

These binding precedents plainly preclude us from reviewing McLaurin's 2013 judgment in this appeal from a revocation proceeding, even though the error claimed in that underlying judgment is a *Rogers* error. Indeed, in *Brantley*, the defendant argued, just as McLaurin argues here, that a judgment containing a *Rogers* error was "invalid on its face," as the conditions "were never actually imposed." 87 F.4th at 266. And he reasoned then that the judgment "ought to be correctable at any time because the judgment is somehow automatically moot." *Id*. But we rejected that argument. While we recognized "that discretionary conditions appearing for the first time in a written judgment are indeed 'nullities,'" *id*. (quoting *Singletary*, 984 F.3d at 344), we nonetheless concluded that that fact did "not make the written judgment entered here invalid," *id*. Rather, "[d]istrict court judgments, no matter how assertedly incorrect, are presumptively *valid and binding* until an appellate court says otherwise" or they are amended by the district court. *Id*. We thus held, plainly and without exception, that "[a] judgment with a *Rogers* error, just as any other judgment, is valid until corrected on appeal or amended by the district court." *Id*. The 2013 judgment in this case was never corrected on appeal, and we have no authority or power to do so now, over a decade later.

25

Thus, McLaurin's effort to correct the alleged *Rogers* error in his 2013 judgment for the first time in this appeal from his revocation judgment must fail, as we lack jurisdiction to do so.

## IV

Even apart from our lack of jurisdiction to grant McLaurin the relief he requests, let alone the resentencing that the majority grants, it is unclear that the 2013 judgment contained a *Rogers* error at all.

As we have defined it, a *Rogers* error involves the inclusion in the written judgment of discretionary conditions of supervised release that "appear for the first time" in the written judgment, having not been orally pronounced at sentencing. *Singletary*, 984 F.3d at 344; *see also United States v. Mathis*, 103 F.4th 193, 197 (4th Cir. 2024); *Brantley*, 87 F.4th at 264. In this case, McLaurin claims that the two standard conditions he violated — standard conditions 6 and 10 — were not orally announced at sentencing and appeared for the first time in the subsequent written judgment and therefore that they were nullities under *Rogers*.

The 2013 judgment contained 6 mandatory conditions, 14 discretionary standard conditions, and 4 discretionary special conditions. The record also shows that at sentencing, the district court did not pronounce, *in haec verba*, the standard conditions, but it did pronounce the four special conditions. Also, it did not pronounce the mandatory conditions, but all agree it was under no obligation to do so. *See Rogers*, 961 F.3d at 296.

26

While the default rule under *Rogers* is that *all discretionary* conditions must be pronounced orally at sentencing, *Rogers* also recognized that discretionary conditions may be pronounced through incorporation by referring to another source available to the parties without reading each condition at sentencing. 961 F.3d at 299. We have concluded that this incorporation method still serves the purpose of the *Rogers* rule, *i.e.*, to give the defendant notice *at sentencing* of the conditions of his supervised release so that he "will have the opportunity to object — an opportunity that is lost if a condition is imposed for the first time in a subsequent written judgment." *Singletary*, 984 F.3d at 346; *see also United States v. Turner*, 122 F.4th 511, 519 (4th Cir. 2024) (conditions incorporated by reference to the presentence report).

In this case, the presentence report expressly recommended that, in addition to the mandatory conditions and four special conditions, the district court should impose the "standard conditions of supervision adopted by the Court." The presentence report was provided to McLaurin *before* sentencing. Moreover, *at sentencing* but before imposing sentence, the district court addressed McLaurin individually and inquired:

> The Court: Mr. McLaurin, have you and your attorney read and discussed the presentence report, including any revisions that may have been made to that report since it was initially issued?
> The Defendant: Yes.

The court then confirmed that fact with McLaurin's counsel. After satisfying itself that McLaurin had read the presentence report and discussed it with his attorney, the court asked the parties whether they had any "changes, modifications, corrections, [or] *objections* with respect to the content of the presentence report," and both parties responded that they did

27

not. (Emphasis added). The court then "accept[ed]" the report. While the court spoke no further of the mandatory and standard conditions, it did read in full the special conditions of supervised release that were contained in the presentence report and added that the justification for them was "amply set out in the presentence report." Thus, it is clear from the record that the presentence report recommended the mandatory, standard, and special conditions of supervised release; that McLaurin read and discussed the report with his attorney and had no objection to it; that the court adopted the report before sentencing; and that the court explicitly relied on the presentence report with respect to supervised release, noting so when it provided the justification for the special conditions announced. In response to all of this, McLaurin made no objection, either at sentencing or after receiving his written judgment that contained all of the conditions — mandatory, standard, and special.

These circumstances are similar to those examined in *United States v. Cisson*, 33 F.4th 185, 193 (4th Cir. 2022), where we recognized that an effective incorporation could be made with distribution and adoption of the presentence report. In *Cisson*, we explained that "[u]nless and until a district court adopts a presentence report's recommendations, those recommendations remain just that: nonbinding *recommendations*." *Id*. But "when a district court *adopts* the recommendations of a presentence report at a sentencing hearing, the report's contents . . . at that point . . . become part of the court's *oral* sentence." *Id*. (first emphasis added). And we honored that principle recently in *United States v. Smith*, 117 F.4th 584, 606 (4th Cir. 2024), where we rejected an argument that the district court

28

had incorporated the conditions in the presentence report because it had not adopted the report before sentencing. As we explained:

> Here, although the sentencing court stated that it had "read," "considered," and "resolved all objections" to Alcorn's PSR, it did not *expressly adopt* the PSR *before* orally pronouncing Alcorn's sentence.

*Id*. (second emphasis added).

Together, *Cisson* and *Smith* provide that district courts can satisfy *Rogers* by adopting the presentence report if the defendant has (1) notice of the recommended conditions *before* sentencing and (2) an opportunity to object at sentencing. *See, e.g.*, *Cisson*, 33 F.4th at 193 (explaining that "Cisson's presentence report put him on notice that his sentence might include discretionary conditions of supervised release" and that those conditions would have "become part of the court's *oral* sentence" had the court adopted the report at sentencing); *Smith*, 117 F.4th at 606 ("Because the sentencing court failed to expressly adopt the PSR's recommended conditions of supervised release in open court, the government's effort to rely on the list of conditions in the PSR is misplaced").

In this case, McLaurin clearly had notice before sentencing of the probation officer's recommendation that he be subject to the "standard conditions of supervision adopted by the Court," and he had an opportunity to object to that recommendation — the very pillars of the *Rogers* rule. *See Singletary*, 984 F.3d at 346. It could thus be well argued that the district court satisfied the purposes of the *Rogers* rule well before *Rogers* was decided.

The fact that it is not clear that the 2013 judgment violated *Rogers* should alone preclude McLaurin from obtaining relief under the plain-error standard of review because, under that rule, the defendant must, as an initial matter, demonstrate the existence of an

29

error that is plain. *See Greer*, 593 U.S. at 507. He must also show that it affected his substantial rights and that letting the error stand would have "a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id*. at 507–08 (cleaned up). I conclude that he does not make either showing; not only was the alleged error not plain, it hardly affected McLaurin's substantial rights or threatens public confidence in the courts.

McLaurin had, *before sentencing*, notice through the presentence report that his term of supervised release would likely be subject to the standard conditions routinely applied during sentencing, and he made no objection to those conditions prior to the district court's adoption of the report. Moreover, McLaurin received his written judgment listing all the conditions of his supervised release, including the standard conditions, and his probation officer also presumably gave him a written statement of "all the conditions to which [his] term of supervised release [was] subject," as required by statute. 18 U.S.C. § 3583(f). Again, McLaurin made no objection or in any way requested that the district court amend his final written judgment's description of the conditions of his supervised release. *See id*. § 3583(e)(2) (authorizing district courts to modify a defendant's conditions of supervised release "at any time prior to the expiration or termination of the term"); *see also* Fed. R. Crim. P. 32.1(c). And as important, when McLaurin was charged with violating those conditions of supervised release, including standard conditions 6 and 10, he did not object that those conditions were "nullities" with which he need not comply. To the contrary, he agreed with the probation officer and the government that he had violated standard conditions 6 and 10 and that those violations should be the basis for the court's revocation of his supervised release, thus affirming the validity of the conditions. And with that

30

agreement, the probation officer and the government abandoned enforcement of the other four alleged violations, which charged violations of indisputably valid conditions that could support revocation, as they related to two mandatory conditions and two special conditions that were in fact orally pronounced to McLaurin during sentencing. Based on McLaurin's agreement, the court revoked McLaurin's 2013 supervised release and imposed a new term of supervised release subject to the same conditions as the original term. In these circumstances, McLaurin's substantial rights have not been affected.

V

Finally, what becomes apparent from the record is that any error in the district court's reliance on the standard conditions to revoke McLaurin's supervised release — leading the revocation hearing to be, in the majority's telling, "infected by the initial *Rogers* error," *ante* at 10 — amounted to an *invited error*. Again, in his agreement with the probation officer and the government, McLaurin agreed to base revocation on his violation of standard conditions 6 and 10 of his 2013 written judgment, thus effectively stipulating that standard conditions 6 and 10 were a legitimate basis for revocation. And based on McLaurin's agreement, the court revoked McLaurin's 2013 supervised release.

Yet, on appeal, McLaurin now contends that those standard conditions, which he agreed should be the basis for the revocation, were unenforceable nullities, requiring the vacatur of his revocation judgment. This is clearly "invited error," precluding review on appeal. *See United States v. Herrera*, 23 F.3d 74, 75–76 (4th Cir. 1994) ("It has long been recognized that 'a court can not be asked by counsel to take a step in a case and later be

31

convicted of error, because it has complied with such request'" (quoting *Shields v. United States*, 273 U.S. 583, 586 (1927)); *see also United States v. Day*, 700 F.3d 713, 727 n.1 (4th Cir. 2012) ("A defendant in a criminal case cannot complain of error which he himself has invited" (cleaned up)).  Indeed, we have found invited error in several other analogous circumstances.  *See, e.g.*, *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) (finding invited error when a defendant successfully opposed a lesser-included offense instruction and then challenged its omission on appeal); *United States v. Williams-Singleton*, 849 F. App'x 394, 398 (4th Cir. 2021) (finding invited error when the defendant stipulated to a loss amount contained in the presentence report and then sought to challenge the amount on appeal); *United States v. Spivey*, 129 F. App'x 856, 858 (4th Cir 2005) (per curiam) (finding invited error when the defendant requested a jury verdict on an offense not charged in the indictment and then challenged its submission to the jury on appeal).

Invited error not only precludes our review, but it also precludes a finding that the plain-error standard of review has been satisfied.  As we explained in *Lespier*:

> In the context of plain error review, an error that was invited by the appellant *cannot be viewed* as one that affected the fairness, integrity, or public reputation of judicial proceedings.  Indeed, recognizing an invited error would seriously undermine confidence in the integrity of the courts.

725 F.3d at 450 (emphasis added) (cleaned up); *see also Spivey*, 129 F. App'x at 859 (noting that "[w]hether we call the error an invited error or a waived error under *Olano* is irrelevant. Invited errors are by definition waived errors, and under *Olano*, not reviewable on appeal").

32

In sum, McLaurin's stipulation of revocation in this case, which he now seeks to challenge, means that any error in the district court's reliance of standard conditions 6 and 10 was an invited error that necessarily fails to satisfy the final plain-error prong.

\*        \*        \*

The majority's decision simply and without analysis applies *Rogers* to all sentences imposed before *Rogers* was decided, whether those sentences were components of final judgments or not and regardless of how old the judgment is. And in doing so, it fabricates a totally new gate by which to open every prior criminal judgment — like this judgment, which is over ten years old. This is foundationally shocking, unprecedented, and completely unwise, and the consequences will be wide-sweeping.

Members of our court have already been expressing concerns about the implementation of *Rogers*. *See United States v. Smith*, 117 F.4th 584, 607 (4th Cir. 2024) (Agee, J., concurring in part and concurring in the judgment) (writing separately "to again point out the mess that has resulted from" *Rogers* and *Singletary*); *United States v. Kemp*, 88 F.4th 539, 547–53 (4th Cir. 2023) (Quattlebaum, J., concurring). Yet, today's decision injects *Rogers* with steroids, expanding its boundaries beyond all established precedents. Now at revocation hearings where the defendant was sentenced prior to *Rogers*, district courts will have an independent obligation to go back to the transcript of the original sentencing hearing and perform a *Rogers* review to see whether the sentencing judge sufficiently orally pronounced any non-mandatory conditions that the defendant is charged with violating. And if those conditions were not sufficiently pronounced, the court will have to open the final judgment to strike them, thus authorizing the defendant with

33

complete impunity to violate even the most basic, common-sense conditions that had been in his final written judgment for years without objection. As the facts of this case illustrate, a defendant could abscond from supervision for months without consequence. This is lawless and beyond reason.

Accordingly, I vote to affirm the judgment of the district court and therefore dissent.

34